[Civ. No. 31041. Second Dist., Div. One. Dec. 1, 1966.]

DOROTHY WALKER, Petitioner, v. THE SUPERIOR COURT OF VENTURA COUNTY, Respondent; CHARLES WALKER, Real Party in Interest.

Paul B. Noel for Petitioner.

No appearance for Respondent.

Jack H. Berkowitz for Real Party in Interest.

McCOY, J. pro tem.*—Dorothy Walker, petitioner, is the defendant and cross-complainant in an action for divorce commenced in March 1965 by Charles Walker, the real party in interest, in the Superior Court for Ventura County.

Petitioner challenges the validity of the orders of the respondent court of September 7 and 8, 1966, that Charles Walker, one of the minor children of the parties, shall remain in the custody of the father, and that he shall be permitted to take the child with him to Canada to reside with him there during the period of his employment in Canada, upon the posting of security, notwithstanding her appeal from that order. We granted the petition for review because of the petitioner's contention that the court had no jurisdiction to make the order in question.

The facts essential to our determination of the question of jurisdiction appear in the record of the proceedings in the trial court filed in response to our writ. At the time the parties were married in December 1959 petitioner, here referred to for convenience as the mother, was the mother of two minor children by a former marriage, namely, Richard, born in November 1947, and Jane, born in February 1949. After the marriage the real party in interest, here referred to for convenience as the father, adopted these two children. Charles Walker, who is the pawn in the present dispute, was born May 4, 1963. As the trial court found, in its memorandum of decision of August 31, 1966, the mother voluntarily surrendered the physical custody of all three children to the father shortly after his complaint was filed without any order of the court "and without a fight in court, in spite of the fact that she had the aid of counsel, and in spite of the fact that she had ample funds for litigation, and . . . allowed this situation to continue for just about a year before she finally sought to raise the custody question before the court." Ever since then all three children have been and now are in their father's custody. Richard and Jane, who are not involved here, have expressed a strong desire to remain with their father. The mother does not seek to regain their custody.

---

*Assigned by the Chairman of the Judicial Council.

The mother first sought to obtain an order giving her custody of Charles early in 1966. This resulted in the court's order of April 22, 1966, awarding temporary custody to the father and referring the matter to the county probation officer for investigation and report. Two months later the mother obtained an order requiring the father to show cause why the court should not modify the order of April 22 and make an order giving her custody pendente lite. The report of the probation officer was filed July 18, and the matter was heard and submitted on August 18.

On August 31, 1966, the court filed the memorandum of decision to which we have already referred. After commenting on some of the facts and noting that his order of April 22 had been made ''upon considerably less evidence and without the aid of a report from the probation office,'' the court said: ''I feel that after the mother left the home a new family unit was constructed and I dislike disturbing it by a new temporary custody order. I feel like leaving the new family unit intact, at least until the divorce trial.''

Although it is not clear from the record how the matter came to the court's attention, we must assume from the further comments of the court in its memorandum of decision that at the hearing on August 18, 1966, the father testified that he was planning to move to Canada at the direction of his employer, and planned to move the children to Canada. ''I am concerned,'' said the court, ''that the father now plans to move the family to Canada. This plan, were it to become permanent, would greatly diminish the mother's opportunities for visitation. I think the husband, by making a decision to go to Canada before securing a final decision on the custody question, has made the question more difficult. However, the planned living accommodations in Canada seem to be very good, and I am disposed to allow the father to take the child to Canada with the rest of the children upon the conditions which I will set forth below.''

The conditions referred to in the memorandum of decision are reflected in the court's order of September 7, which is the subject of this proceeding. So far as is pertinent here, that order reads as follows: ''It is hereby ordered that the custody of the minor child, Charles Walker, shall remain in the custody of the plaintiff. The existing custody order is therefore not modified except as follows: That plaintiff may take minor child to Canada to reside with him there or near his place of employment during such period as he shall continue

to be employed in Canada. If the plaintiff takes the minor child with him to Canada it shall be upon the condition that he post a bond in the amount of $2,000.00, which bond shall be in the form satisfactory to the court, to guarantee that the plaintiff will return the minor child to the State of California at all times he is so ordered to do by this court; and the (7) day period on Thanksgiving, 1966, for a two weeks period at Christmas, 1966, and for a one week period at Easter, 1967 all at the expense of the plaintiff and shall [sic] in accordance with the terms of this order. The court hereby retains jurisdiction to make further ex-parte orders on visitation and means of transportation, arrangements for care during said transportation, or other similar matters and the court further reserves jurisdiction to make orders pertaining to visitation during the summer of 1967 in the event the matter is not brought to trial and decided by said date. Said retained jurisdiction to make further orders as mentioned above may be exercised by the court at any time that the court is advised by counsel for either party that the parties have not been able to agree upon any of the details of the visitation or appearance of the minor at the time of trial. The court retains jurisdiction in connection with said bond only to determine ex parte upon showing satisfactory to it by affidavit or otherwise, whether the plaintiff has wilfully violated the terms of this custody order. In the event that plaintiff contends that transportation is impossible or that the child is too ill to travel it shall be incumbent upon the plaintiff to so show by affidavit or otherwise, in form entirely satisfactory to the court, what the circumstances are. The bond shall have a copy of this order attached thereto and made a part of the bond by reference, however, the surety shall not be bound upon this bond for any violation of this order by the plaintiff occurring after September 1st, 1967. The bond will be in form so that the ex parte determination of this court, without notice to the signatory on the bond, that the plaintiff has violated this order and the bond, shall be conclusive upon the signatory upon the bond in any action upon the bond. It is further ordered that on the above stated periods where the minor child is with the defendant in the event of the plaintiff's moving to Canada the plaintiff shall pay to the defendant as and for child support the sum of $50.00 per week. The plaintiff is ordered to keep defendant informed at all times as to the place of residence and health of the said minor.''

The order of September 7 was filed September 8, together

with the required bond executed by the father's employer and approved by the court. After the court denied the mother's motion for a stay of the order of September 7, the father moved to Canada with the three children.

In the proceeding now before us the mother seeks an annulment of the order of September 7 with respect to the custody of the child and of the order of September 8 approving the bond, on the sole ground that the court acted in excess of its jurisdiction in making those orders. Our only concern is with the narrow question thus raised. We are not concerned with the question of whether the order of September 7 is an appealable order, or with the merits of the case. Those matters can be settled when the record on appeal is filed.

 In our opinion the trial court had jurisdiction to make the order complained of. As the court said in *Stack* v. *Stack*, 189 Cal.App.2d 357, at page 366 [11 Cal.Rptr. 177]: "Civil Code, section 213, gives a parent entitled to the custody of a child the right to change its residence, but subject to the power of the court to restrain a removal which would prejudice the rights or welfare of the child. There is no doubt that a California court can permit a parent who has custody of a child to remove the child from the state, either to a sister state (*Shea* v. *Shea*, 100 Cal.App.2d 60, 63 [223 P.2d 32]), or to a foreign country (*Gantner* v. *Gantner, supra,* 39 Cal.2d 272, 280 [246 P.2d 923])."

In *Shea* v. *Shea*, 100 Cal.App.2d 60, the court said (pp. 63-64 [223 P.2d 32]): "Taking the order [appealed from] at its face as merely one prohibiting the father who had custody, from removing the children from the state, the court had no power to make such an order. Plaintiff has cited no authority, and we have found none, for her contention. While there are no cases in California on the question of taking the children out of the state, it has been held that a court, in the absence of a finding that the child's removal would prejudice its rights or welfare, has no power to prohibit the parent having custody from taking the child out of a particular county. Thus, in *Heinz* v. *Heinz*, 68 Cal.App.2d 713 [157 P.2d 660], it was held that the court exceeded its authority in prohibiting the father to whom it gave the custody of his minor son, from removing him from Los Angeles County. After quoting section 213 of the Civil Code, which reads 'A parent entitled to the custody of a child has a right to change his residence, subject to the power of the proper court to restrain a removal which would prejudice the rights or welfare of the child' the opinion

reads (p. 715) : 'In *Luck* v. *Luck,* 92 Cal. 653, 655 [28 P. 787], our Supreme Court states the rule thus: ". . . if he [the father] is entitled to the custody of the children at all, he has the right to name any reasonable place in which they shall abide with him. . . ." Applying the foregoing rule to the facts of the present case, since the trial court found that plaintiff was a fit and proper person to have the custody of his minor child and there was no finding that the child's rights or welfare would be prejudiced by his removal from Los Angeles County, the court's order in restraining plaintiff from removing his son from Los Angeles County was erroneous.' " In the same case the court also said (p. 64) : "By analogy, *White* v. *White,* 68 Cal.App.2d 650 [157 P.2d 415], applies. In that case, on application the court modified a previous order which prohibited the child being removed from Southern California by providing over the father's objection that the divorced mother might take the child with her to the home of herself and her new husband in Pennsylvania. The court said (pp. 651-652) : 'In enacting section 138 of the Civil Code the Legislature did not limit the discretion of the court by state boundaries. Counsel has not cited any California case in which it is especially held that the superior court may grant permission of a parent to take a minor child from the state but in a number of other states such orders have been made with the approval of the reviewing courts. [Citations.]' (See, also, *Clarke* v. *Clarke,* 35 Cal.2d 259 [217 P.2d 401].) "

The rule also finds support in *Milne* v. *Goldstein,* 194 Cal.App.2d 552, where the court said (pp. 556-557 [15 Cal. Rptr. 243]) : "A parent who has been awarded either sole or joint custody and right of physical possession of children may, under certain circumstances, remove them from the state. (Civ. Code, § 213; *Shea* v. *Shea,* 100 Cal.App.2d 60, 63 [223 P.2d 32] ; *Gantner* v. *Gantner,* 39 Cal.2d 272, 280 [246 P.2d 923].) The permissive circumstances are usually a showing that the best interests of the children would be promoted by their removal (*Gantner* v. *Gantner, supra*), and the absence of specific prohibition against removal in the custody order. (*In re Bauman,* 82 Cal.App.2d 359 [186 P.2d 154] ; *In re Dehning,* 135 Cal.App.2d 635 [287 P.2d 782] ; *In re Memmi,* 80 Cal.App.2d 295 [181 P.2d 885].) The fact that the resident parent may be deprived of visitation rights is generally not alone sufficient to justify restraint on the other parent's free movement unless the latter is inconsistent with the welfare of the child. (*Dozier* v. *Dozier,* 167 Cal.App.2d 714, 719 [334

P.2d 957].) But if the specific motive is the frustration of the other parent's visitation rights and is unrelated to the child's welfare, permission to remove will be denied. (*Rosin* v. *Superior Court*, 181 Cal.App.2d 486 [5 Cal.Rptr. 421].) The problem of removal of the children from the state and to a foreign country for visitation purposes, however, by a parent *who has no other custodial rights*, requires special appraisal; once the parent and child are outside of the jurisdiction of the court they are for all practical purposes beyond the reach of its decrees, and the foreign court, on the basis of a change of circumstances, could impose other custodial orders. (*Ward* v. *Ward*, 150 Cal.App.2d 438 [309 P.2d 965]; *Lerner* v. *Superior Court*, 38 Cal.2d 676 [242 P.2d 321]; *Gantner* v. *Gantner*, 38 Cal.2d 691 [242 P.2d 329].) ''

Here, as we have seen, the petitioner had voluntarily surrendered the custody of the three children to their father shortly after he filed his action for divorce in March 1965. When their mother sought to regain custody of the youngest child, Charles, the court awarded his custody pendente lite to the father. Consequently, the order of September 7 permitting the father to take the child with him to Canada, together with the two older children, did not deprive the mother of any custodial rights. The fact that the mother might thereby be deprived of some visitation rights did not affect the jurisdiction of the court to modify the previous custody order as it did.

The case of *Lerner* v. *Superior Court*, 38 Cal.2d 676 [242 P.2d 321] relied on by petitioner is not controlling here. There the mother had appealed from an order awarding to the father sole custody of one of the minor children whose custody had been awarded to both parents jointly by the final decree. The court held that by reason of section 946, Code of Civil Procedure as it then read, the trial court had no jurisdiction pending appeal to modify the order appealed from so as to permit the father to take the child out of the state. In the case before us no appeal from the order of April 22, 1966, was pending when that order was modified by the order of September 7. It should also be noted that both *Lerner* and *Gantner* v. *Gantner*, 38 Cal.2d 691 [242 P.2d 329] were decided in 1952, before the 1955 amendment to section 946 and the enactment of section 949a of the Code of Civil Procedure.

The other points urged by petitioner do not relate to the jurisdiction of the trial court to make the order here in question, and call for no consideration by us.

The petition for an order annulling the orders of the respondent court dated September 7 and 8, 1966, on the ground that the court had no jurisdiction to make those orders is denied.

Fourt, Acting P. J., and Lillie, J., concurred.