[Civ. No. 15324. Third Dist. Aug. 18, 1976.]

In re the Marriage of KATHY S. and CHARLES B. CIGANOVICH.
KATHY S. CIGANOVICH, Respondent, v.
CHARLES B. CIGANOVICH, Appellant.

COUNSEL

William C. Schemel for Appellant.

Ervin F. Vaughan for Respondent.

OPINION

**FRIEDMAN, J.**—The parties first brought their domestic troubles before the Yolo County Superior Court in June 1972. Husband and wife leveled charges of harassment and molestation at each other. In September 1973 an interlocutory decree of dissolution was entered. As amended in June 1974, the decree gave custody of the two children (ages six and three) to the mother, provided the father weekend visitation rights on alternate weekends and directed him to pay $100 monthly child support (retroactively commencing February 1973) and $10 monthly spousal support.

In May the mother commenced a series of moves between Yolo County and various places in Nevada. At times she concealed her whereabouts and that of the children from her ex-husband. In May 1974 she took the children to Reno, withdrawing the elder child from school a week before the end of the school term. She stated that she did so to "get away" from her ex-husband and to "avoid" him. Her abode in Reno was a motel. She returned to Yolo County in June 1974 and left the children

temporarily with their father. On July 1 she took the children back to Nevada, moved from the Reno motel to a trailer court in Sparks, unsuccessfully applied for welfare, then secured temporary work in a Sparks gaming establishment. In November she moved with the two children to the small Nevada community of Fernley. She did not tell the children's father of her moves to Sparks and to Fernley. She stated that she used her former Reno (motel) address as a "blind" address.

The father testified that after his ex-wife picked up the children on July 1, 1974, he did not know their whereabouts; that he made attempts to locate the children; that the ex-wife called him at work in August 1974 and threatened that he would never see the children again if he didn't pay child support; that he saw the children for two hours on December 3; that she said he could pick up the children at the Reno (motel) address for the Christmas vacation; that when he arrived there he found she was no longer living there; that he had deposited payments aggregating $500 in a bank trust account in lieu of sending child support money to the ex-wife.

In September 1974 he filed papers seeking modification of the support and custody orders, declaring that the ex-wife had secreted the two children, that support payments had been withheld "pending location" of the children and declaring that he was able to assume their custody and to provide them a home and stable environment.

In the meantime the ex-wife had gone to a Nevada district attorney and filed a request for child support proceedings under the reciprocal support statutes. That step resulted in the institution of a support proceeding by the Yolo County District Attorney. Both the ex-husband's motion for modification of the decree and the district attorney's request for a support order were heard at the same time. By then the ex-husband had turned over to the district attorney the $500 previously deposited in a bank plus another $100. He was still more than $800 in arrears. The court denied modification of the decree and continued the ex-husband's visitation rights "as presently ordered." The ex-husband appeals.

The events are typical of a frequent, unpleasant and perplexing syndrome of family dissolution in a mobile society. After awarding custody of children to the mother, a judicial decree professes protection of the father's paternal interests by a visitation provision which is reduced to empty pomposity when the mother moves the children to another region. The mother's move may be motivated by her own

legitimate needs ·or by a vengeful desire to demolish the paternal relationship. Regardless of the mother's good or ill motives, the father's inability to spend time and money on travel may effectively damage or destroy his legitimate paternal aspirations.

Mired in this predicament, a father expectably resorts to the most available weapon—he withholds support payments. California and many other states have adopted the Uniform Reciprocal Enforcement of Support Act. (Code Civ. Proc., § 1650 et seq.) Objective of the act is to aid stationary mothers in exacting child support from peregrinating fathers. The peregrinating mother reverses that objective. The reciprocal act offers her the "long arm" of two district attorneys and of the taxpayers of two states to deprive her ex-husband of his financial weapon. The reciprocal law assures the continued flow of child support. It also facilitates the mother's destruction or impairment of the father's visitation rights and paternal interests.

■ As a general rule a parent having child custody is entitled to change residence unless the move is detrimental to the child. (Civ. Code, § 213; *Forslund* v. *Forslund,* 225 Cal.App.2d 476, 494 [37 Cal.Rptr. 489]; *Evans* v. *Evans,* 185 Cal.App.2d 566, 571 [8 Cal.Rptr. 412].) That the child's removal from the state practically deprives the father of his visitation rights is "generally" insufficient to justify restraint on the mother's free movement. (*Walker* v. *Superior Court,* 246 Cal.App.2d 749, 754 [55 Cal.Rptr. 114]; *Stack* v. *Stack,* 189 Cal.App.2d 357, 367 [11 Cal.Rptr. 177].)

The general rule does not govern when the mother acts with an intent to frustrate or destroy the father's visitation right. (*Walker* v. *Superior Court, supra,* 246 Cal.App.2d at p. 755; *Rosin* v. *Superior Court,* 181 Cal.App.2d 486, 500 [5 Cal.Rptr. 421].) Some of the decisions hold that the mother's attempt to destroy the visitation right is an interference with the proceedings and a contempt of court. (*Rosin* v. *Superior Court, supra,* 181 Cal.App.2d at pp. 499-500.) Other courts have terminated or decreased spousal support as a means of pressuring a recalcitrant mother into compliance with paternal visitation rights. (*Clarke* v. *Clarke,* 4 Cal.App.3d 583, 589 [84 Cal.Rptr. 393]; *Williams* v. *Williams,* 103 Cal.App.2d 276, 278 [229 P.2d 830].) One court made the custodial parent put up a bond to assure compliance with a visitation order. (*Walker* v. *Superior Court, supra,* 246 Cal.App.2d 749.) ■ Most significant for our present purpose is the court's power to transfer custody or otherwise modify the custody and support provisions after the

mother has attempted to frustrate the father's visitation rights. (*Hoffman v. Hoffman,* 197 Cal.App.2d 805, 814 [17 Cal.Rptr. 543].)

A finding of the mother's unfitness is not a prerequisite to a change of custody. (*Hoffman* v. *Hoffman, supra,* 197 Cal.App.2d at p. 810; see generally, *Holsinger* v. *Holsinger,* 44 Cal.2d 132, 135 [279 P.2d 961].) Nor is it necessary that the moving party show a change of conditions when he seeks court aid in remedying a frustration of his visitation rights. (*Fay* v. *Fay,* 12 Cal.2d 279, 282 [83 P.2d 716].)

Several courts have held that a mother is estopped to enforce child support payments where she has displayed the objective of destroying the father's visitation rights. (*Szamocki* v. *Szamocki,* 47 Cal.App.3d 812, 818-820 [121 Cal.Rptr. 231]; see *Spurrell* v. *Spurrell,* 205 Cal.App.2d 786 [23 Cal.Rptr. 414].) Other courts have disapproved expungement of the child support obligation as a means of punishing a recalcitrant mother. (*Clarke* v. *Clarke, supra,* 4 Cal.App.3d at p. 589; *Ernst* v. *Ernst,* 214 Cal.App.2d 174, 178 [29 Cal.Rptr. 478].)

■ Confronted with such a situation, a trial court should be concerned with the child's welfare as the paramount consideration. The court should bear in mind that preservation of parental relationships is in the best interest of the child as well as the parent. (*Friedland* v. *Friedland,* 174 Cal.App.2d 874, 879 [345 P.2d 322]; *Dozier* v. *Dozier,* 167 Cal.App.2d 714, 720 [334 P.2d 957].) The court should also bear in mind that a custodial parent's attempt to frustrate the court's order has a bearing upon the fitness of that parent. (*Moniz* v. *Moniz,* 142 Cal.App.2d 527, 530 [298 P.2d 710].)

■ From these cases we glean the notion that a mother's sabotage of the father's visitation right furnishes no ground for withholding child support payments. It does provide a ground for a motion to modify the decree which the court should consider as part of the array of circumstances affecting custody and support.

■ Generally, an appellate court reverses a domestic relations order only for abuse of discretion. Reversal is in order where it is apparent that the court applied an erroneous standard. (*In re B. G.,* 11 Cal.3d 679, 699 [114 Cal.Rptr. 444, 523 P.2d 244]; *Chaffin* v. *Frye,* 45 Cal.App.3d 39, 45 [119 Cal.Rptr. 22].) ■ In this case there is not the slightest doubt as to the mother's motivation. She went to Reno, had no job or other preexisting reason for going there, concealed her whereabouts and that

of the children, even going to the extent of using a "blind" address. Her entire course of conduct was one of concealment of the children. Yet the trial court ignored this conduct as a ground for modification of the decree. The court referred to the mother's constitutional right of "freedom of movement" but failed to recognize the well-established rule that removal of the children with the objective of frustrating visitation rights offends the court, offends the interests of the noncustodial parent and offends the welfare of the child.

We do not attempt to forecast what disposition of the modification request might be made when all the circumstances are considered. We do hold that the trial court erred by failing to consider a judicially recognized ground for changing custody.

The order denying modification is reversed and the cause remanded for further proceedings on the motion for modification.

Puglia, P. J., and Evans, J., concurred.