[Civ. No. 48389. Second Dist., Div. Four. Nov. 4, 1976.]

COUNTY OF SANTA BARBARA, Plaintiff and Respondent, v.
PAUL ROSS FLANDERS, Defendant and Appellant.

### COUNSEL

Kenneth S. Biely for Defendant and Appellant.

Stanley M. Roden, District Attorney, and Patrick J. McKinley, Deputy District Attorney, for Plaintiff and Respondent.

### OPINION

**KINGSLEY, Acting P. J.**—Defendant, the father of two minor children, appeals from an order of the superior court directing him to pay to the county $3,800 as accrued and unpaid child support and $100 per month for future child support. For the reasons set forth below, we modify the order and affirm it as modified.

I

By a decree of dissolution, entered on July 6, 1965, defendant was ordered to pay to his ex-wife the sum of $50 per month as child support for each of two minor children—a total of $100 per month. Such payments were made for about 18 months and until the ex-wife moved without giving defendant her current address. For some period, defendant attempted to make payments in accordance with the court order but, after the ex-wife moved from Orange County, his letters were returned to him marked "address unknown" or with similar endorsements. It is clear from defendant's testimony that he was aware of, or could have secured, the ex-wife's address during at least part of the period in question; it is also clear that his efforts to contact her were effectively prevented by her actions.

The evidence shows that the ex-wife had been in receipt of child support payments from the County of Santa Barbara from August 1, 1971, until September 1974.[1] The complaint in this action alleged as follows:

"Petitioner, a Political Subdivision of of the State of California, *on information and belief,* respectfully shows:

"1. That the minor offspring hereinafter named in Paragraph 3 are the Respondent's offspring and are the product of his Marriage to JUNE (O'Dell) (FLANDERS) McRATH and the Respondent owes them a duty of support under California Civil Code Section 248, Section 11350 and 11488 of the Welfare and Institution Code.

"2. That the Respondent separated from his (wife named in Paragraph 1 and) minor offspring named in Paragraph 3 below.

"3. That as a result of this separation (Aid to Families With Dependent Children) public assistance in the amount of $3,800.00

---

[1]The reporter's transcript shows the following exchange between the deputy district attorney and defendant/appellant Flanders:

"Q. But, isn't it a fact, Mr. Flanders, that from the time you were contacted by the District Attorney's Office in October of 1967 until the present date, you have been in constant communication with the Santa Barbara County District Attorney's Office in reference to payment to your wife for the support of the two minor children?

"A. That is true.

"Q. And during that time you have been cognizant of the fact that your wife was in fact receiving County assistance of some means; is that not correct?

"A. That is correct."

($100.00 per month as per divorce order) was paid by Petitioner to Respondent's (wife and) minor offspring between August 1, 1971 and September 30, 1974, as shown by the attached Declaration of Auditor-Controller, of Santa Barbara County, California, and public assistance is continuing to be paid by the Petitioner to the Respondent's (wife and) minor offspring:

| "NAME | BIRTHDATE |
| --- | --- |
| "TAMMY MAYE FLANDERS | 12/27/62 |
| "JEULY MARIE FLANDERS | 7/31/64" |

Attached to the complaint, as exhibits, are a four-page declaration, by a deputy county auditor, purporting to show payments to the ex-wife, from August 1971, through August 1974, totalling $12,181, and a two-page declaration by another deputy auditor-controller, showing that no payments had been made by Mr. Flanders. Mr. Flanders' answer denied the allegations above-quoted, also on information and belief.

▮ No evidence as to the amount (as distinguished from the fact) of the county's payments was introduced at the trial. On this appeal, defendant contends that the judgment should be reversed for lack of such evidence.

Clearly the pleadings raised no triable issue as to the amount of payment. The county knew what it had paid Mr. Flanders' ex-wife and could and should have alleged the amount directly and not on information and belief (*Hall* v. *James* (1926) 79 Cal.App. 433 [249 P. 876]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 287, pp. 1961-1962.) Defendant's denial was likewise improper. The amount of the county's payments was of record in the county offices; a simple inquiry would have permitted him to verify, or to refute, the exhibits attached to the complaint.

However, it is clear from reading the reporter's transcript of the trial that defendant was not concerned with verifying the *amount* of the county's payments. His position was that he was not obligated to repay anything to the county. His contentions, as presented at the trial, were: (a) that the court order directed him to pay to his ex-wife and not to the

county; (b) that he was excused from making the court-ordered payments because his ex-wife had secreted herself and had refused to accept his letters containing checks; and (c) that, if he paid the county, he would still be liable for the same amount to his ex-wife should she elect to pursue him in her own name. Under those circumstances, we will not reverse for a failure to offer evidence as to a fact—the *amount* of payments—as to which defendant was unconcerned at the trial.

## II

We turn to examine defendant's theories of nonliability in the light of two sections of chapter 578 of the 1971 statutes and two sections of chapter 924 of the 1975 statutes.

As enacted by section 3.3 of the 1971 statute, section 248 of the Civil Code reads as follows: "The obligee may enforce his right of support against the obligor and the county may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support. The right of the county to reimbursement shall be subject to any limitation otherwise imposed by the law of this state. The court may order the obligor to pay the county reasonable attorney fees and court costs in any proceeding brought by the county pursuant to this section."

As enacted by section 25.5 of the 1971 statute, section 11350 of the Welfare and Institutions Code reads as follows:

"In any case of separation or desertion of a parent or parents from their spouse and child or children which results in aid being granted under this chapter to such spouse and child or children, such parent or parents shall be obligated to the county for an amount equal to: (a) the value of the aid received by such family during such period of separation or desertion with respect to such spouse and child or children, reduced by (b) any amount actually paid by such parent or parents for the support and maintenance of such spouse and child or children during such period, if and to the extent that such amount reduces the aid received; except that in any case where an order for the support and maintenance of such spouse and child or children has been issued by a court of competent jurisdiction, the obligation under this section shall

not exceed the amount specified in such order less any amount actually paid by such parent or parents during such period. In the absence of such an order, the district attorney shall bring suit for enforcement of support pursuant to this section. Any payments required pursuant to this section shall be reasonably based on ability to pay.

"The court may order the defendant to pay the county reasonable attorney fees and court costs in any proceeding brought by the county pursuant to this section."

Since both sections were enacted as part of the same statute, which was a general revision of the welfare laws of California, they must be reconciled if possible. We, thus, construe those sections as allowing the county to sue either on behalf of the "obligee"—i.e., the ex-wife,—or to sue in its own name. If the county sues on behalf of the obligee, it may recover the full amount of the delinquent payments; if, as here, it sues on its own behalf, its recovery is the lesser of the delinquent support payments or the aid furnished by the county. Since, in the present case, the county had paid far more than the dissolution court's order, the trial court properly fixed the amount payable at the amount of the delinquency under the dissolution order—an amount not disputed at the trial or here.

■ Defendant's basic contention, as to the past due payments, is that he was excused by the ex-wife's preventing him from making direct payments. We reject that contention.

■ Although defendant's answer appears to rely in part on an alleged denial of his visitation rights, that theory was expressly disclaimed by him at the trial.[2] It follows that the cases relied on by him which did involve (among other factors) denial of visitation rights, are not pertinent to the case at bench.[3]

---

[2] He said: "Sir, I sent my child support payments to my ex wife, whether I had visitation rights or not. I think we have made that clear." Again he testified in response to a question by the deputy district attorney: "Q. And is it not a fact that you have repeatedly indicated that you would not make those payments because of an apparent problem in reference to your visitation; is that not correct? [¶] A. I don't think that is correct, sir. [¶] Q. Would you tell the Court then whether or not the difficulty with visitation has been the reason or other reasons have caused you not to make the payments? [¶] A. The point I am trying to get out is the fact that I sent her the money, and there is no reason for this County to give her money, too."

[3] As bearing on the merits of such a contention, if properly raised at trial, see *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 294 [132 Cal.Rptr. 261].

■ In the case at bench, defendant was given, by express action of the county officials, the opportunity to make his court-ordered payments to the county. Had he done so, he would have been protected against the present action. He was entitled to no more.

■ Defendant also contends that since, as we point out below, the record does not support a finding that defendant had, at the time of trial, the ability to pay the arrears, the trial court was in error in making the reimbursement order. We disagree. The original dissolution court's support order is still in force; it has never been modified; it imposed a collectible duty unless and until it is modified.[4]

In 1975, after the present action was filed, and after the past due payments herein involved had accrued, the Legislature, by an urgency statute in effect at the time of trial (Stats. 1975, ch. 924, §§ 5, 5.5), amended section 11350 of the Welfare and Institutions Code and added section 11350.1 to that code. The new statutes read as follows:

Section 11350: "In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents shall be obligated to the county for an amount equal to:

"(a) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; or in the absence of such court order,

"(b) The amount of aid paid to the family during such period of separation or desertion limited by such parent's reasonable ability to pay during that period in which aid was granted; and

"(c) Such obligation shall be reduced by any amount actually paid by such parent during such period of separation or desertion for the support and maintenance of such family.

"The district attorney shall take appropriate action pursuant to this section in the superior court of the county which provided aid under this chapter.

---

[4]More accurately, unless or until defendant files a motion for modification and that motion is successful, in which case the modification may relate back to the filing of the motion. (Civ. Code, § 4700, subd. (a).)

"The court may order the defendant to pay the county attorney fees and court costs, based on such defendant's reasonable ability to pay, in any proceeding brought by the county pursuant to this section.

"In making the determination of the defendant's reasonable ability to pay attorney's fees and court costs under this section, the court shall be limited to the following considerations:

"(a) The wealth and income of the defendant;

"(b) The current ability of the defendant to earn;

"(c) The age of the defendant."

Section 11350.1: "Notwithstanding the provisions of any other statute, in any action brought by the district attorney for the support of a minor child or children, the action may be prosecuted in the name of the county on behalf of such minor child or children. The mother shall not be a necessary party in such action but may be subpoenaed as a witness. In an action under this section there shall be no joinder of actions, or coordination of actions, or cross-complaints, and the issues shall be limited strictly to the question of paternity, if applicable, and child support. Nor shall such support or paternity action be delayed or stayed because of the pendency of any other action between the parties. Nothing herein contained shall be construed to prevent the parties from bringing an independent action under the Family Law Act or otherwise, and litigating the issue of support. In such event, the court in such proceedings shall make an independent determination on the issue of support which shall supersede the order made pursuant to this section."

We disagree with defendant that, insofar as his substantive obligation for past due payments is concerned, that obligation is governed by the 1971 version of sections 248 and 11350—which was the law at the time that obligation accrued. Since we have concluded that the portion of the order appealed from was proper under the 1971 statute, we need not, and do not, determine whether the same result could be sustained under the 1975 revision of section 11350.

### III

However, section 11350.1 does contain some procedural provisions, properly applied by the trial court in the case at bench. Thus it properly

held that the ex-wife was neither a necessary nor a proper party to the instant action.

## IV

█ In addition to the order relating to reimbursement of the county for its past payments, the order appealed from directed defendant to make payments in the future, at the $100 rate. But, under the final clause of the 1971 version of section 11350, such an in futuro order is limited by the obligor's present ability to pay. The record before us does not support a finding that defendant had, at the time of the order, the present ability to pay $100 per month or any other amount. That record shows that he was then unemployed and living on disability payments. The record does show that, under the laws and regulations applicable to his disability status, the *ex-wife* could, by application, with or without defendant's consent, secure child support payments to be made directly to her. But that is not the equivalent of an ability on the part of defendant to make payments himself out of his own funds. It follows that the portion of the order relating to payments from November 1974 on must be reversed.

The order appealed from is modified by deleting therefrom the following language: "The Court further finds that the Respondent must pay the Petitioner $100.00 a month for the support of his minor children, effective November 1, 1974, and continuing until the further order of the Court"; as so modified, the order is affirmed. Neither party shall recover costs in this court.

Dunn, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The majority upholds the trial court's order—that respondent Flanders shall pay to petitioner County of Santa Barbara the sum of $3,800 to reimburse the county for public assistance funds expended by it to support Flanders' two minor children.

Appellant Flanders contends on this appeal that the county as petitioner-plaintiff below failed to introduce any testimony or other evidence to establish that the sum of $3,800 was paid by the county to his ex-wife for the support of his minor children. This contention of

Flanders is valid, and requires that the order appealed from be reversed. The majority states that the evidence shows that the ex-wife was in receipt of child support payments from the County of Santa Barbara from August 1, 1971, until September 1974. The record below referred to for support of this statement is testimony from Flanders that he had been in constant communication with Santa Barbara County District Attorney's office in reference to payments to his wife for the support of the two minor children. The majority quotes this language from the record: "Q. And during that time you have been cognizant of the fact that your wife was in fact receiving County assistance of some means; is that not correct? [¶] A. That is correct." I fail to see how such testimony can be distorted by the majority opinion into a finding that "[s]ince, in the present case, the county has paid far more than the dissolution court's order, the trial court properly fixed the amount payable at the amount of the delinquency under the dissolution order—an amount not disputed at the trial or here."

I see no evidence in the record that the county paid Flanders' ex-wife the sum of $3,800. The most that can be obtained from the testimony of Flanders is that he was aware that his "wife was in fact receiving County assistance of *some means* . . . ." (Italics added.) I cannot interpret this as evidence that the county had paid the ex-wife a minimum of $3,800.

The majority holds that the pleadings raised no triable issue as to the amount of payment. This holding overlooks the fact that the complaint, *on information and belief,* in paragraph 3 thereof, alleged that "public assistance in the amount of $3,800.00 . . . was paid by Petitioner [the County of Santa Barbara] to Respondent's [Flanders'] (wife and) minor offspring between August 1, 1971 and September 30, 1974." The allegations of paragraph 3 were denied by defendant Flanders for lack of information or belief.

The majority seeks to obviate the lack of proof at the trial of these payments by the county by simply asserting that "[t]he county knew what it had paid Mr. Flanders' ex-wife and could and should have alleged the amount directly and not on information and belief [citations]." The majority then concludes that the defendant's denial was also improper —on lack of information or belief; that the amount of the county's payments was of record in the county offices and that a simple inquiry would have permitted Flanders to verify or refute the exhibits attached to the complaint.

This analysis of the majority overlooks the fact that the burden of proof was on the county that filed the complaint and alleged the county payment of sums far in excess of $3,800 to the ex-wife. This burden initially includes the burden of going forward with the evidence. (Evid. Code, §§ 500, 550, subd. (b); see Jefferson, Cal. Evidence Benchbook (1972) § 45.2, pp. 781-791.)

The majority states that defendant's denial for lack of information and belief was improper in spite of the fact that the plaintiff's complaint—on information and belief—was improper. I disagree.

It is an accepted rule of pleading that "[a]lthough section 437 of the Code of Civil Procedure [now Code Civ. Proc., § 431.30] permits a denial in a nonpositive form based upon information and belief, or upon lack of information or belief, such denials are insufficient where the facts are presumptively within the knowledge of the defendant. [Citations.] This rule is frequently applied to matters of public record. Accordingly, a denial upon information and belief, or for want of information or belief, of an alleged fact which may be ascertained from the *inspection of a public record* within reach of a defendant is insufficient to raise an issue, and such a denial constitutes an admission of the allegation of the complaint. [Citations.]" (*Oliver* v. *Swiss Club Tell* (1963) 222 Cal.App.2d 528, 538-539 [35 Cal.Rptr. 324].) (Italics added.) It is to be noted, however, that this rule of pleading with respect to matters of public record is a general rule applicable to *affirmative* pleading as well as to *denials.* Thus, an affirmative allegation, upon information and belief, "violates the rule of pleading, which requires that matters of record must be alleged positively and not upon information and belief." (*Home Owners' Loan Corp.* v. *Gordon* (1939) 36 Cal.App.2d 189, 192 [97 P.2d 845].)

In the case before us, therefore, if the matter of the fact of payment and the amount of the county's payments to Flanders' ex-wife is a matter of public record, as the majority contends, the County of Santa Barbara, as petitioner and plaintiff, should have alleged these payments positively, rather than "on information and belief." The majority concedes that the county should have done this. But, even though the county did not plead its contentions correctly, the majority holds that the county was not required to prove its case against defendant with the production of evidence. This odd and untenable result is reached on the theory, apparently, that defendant Flanders was, nevertheless, required to answer plaintiff's lack-of-information-or-belief allegations positively, or,

suffer the consequences of proving the negative—that the county had *not* made the payments to defendant's ex-wife.

This reasoning is untenable and erroneous. Since the county's complaint alleges the matter of the county's payments on information and belief, and *not* by *positive* allegations, respondent and defendant Flanders, in his answer to the complaint, was entitled to deny the information-and-belief allegations with lack-of-sufficient-information-or-belief denials. If the fact of the county's payments to the ex-wife of Flanders was not presumptively within the knowledge of the county as a matter of public record—since the county's complaint did not allege the fact positively—such fact cannot reasonably be said to be presumptively within the knowledge of Flanders as defendant in the action. I fail to see the logic in requiring a defendant to deny *positively* a plaintiff's allegations based on *information and belief*, or else the burden of proof shifts to defendant. No stricter pleading burden should be placed upon a defendant than that employed by the plaintiff.

The majority opinion asserts that the amount of the county's payments to Flanders' ex-wife was of record in the county offices. This is an unfounded assumption, not based on any evidence introduced at the trial. In the first place, it is refuted by the very fact that the county's complaint alleged the *fact* and the *amount* of the payments on information and belief—*not* by *positive* allegations.

The majority asserts that the obligation was on the defendant to verify *"or to refute"* the exhibits attached to the complaint.

But the four declarations by a county employee, attached to the complaint as exhibits, are simply to the effect that warrants in specified amounts were issued in named months to defendant Flanders' ex-wife and, that "[i]f called as a witness to testify in the above matter," the declarant "would be able to testify competently thereto." These affidavits do not set forth that the facts asserted are *matters of record* in the county's auditor-controller's office. These declarations are inadmissible hearsay (see Jefferson, Cal. Evidence Benchbook (1972) § 1.2, pp. 4-5), and have been denied effectively by the answer of Flanders to the county's complaint. Affidavits, attached to a complaint as exhibits, do not lose their hearsay character by virtue of the attachment, and do not become admissible in evidence.

The majority justifies its position that plaintiff was not required to sustain its burden of proof by stating that the record below does not indicate that defendant Flanders was concerned with *verifying the amount* of the county's payments. This reasoning is fallacious. In the absence of a stipulation or admission, a defendant's *concern* or *lack of concern* is irrelevant to the question of whether a plaintiff has sustained its burden of proof as to a "fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.)

The County of Santa Barbara, the plaintiff in the instant contested action, had the burden of proof to establish, by a preponderance of the evidence, that the County had made payments to Flanders' ex-wife, as alleged in the complaint. This the county failed to do, since it introduced *no* evidence at all on the issue. Flanders, as respondent and defendant, was entitled, therefore, to judgment in his favor.

Since the trial court's order involved in this appeal is not supported by any evidence, substantial or otherwise, I see no necessity in dealing with the other issues discussed in the majority opinion.

I would reverse the order from which the appeal has been taken.