Filed 1/7/25  Marriage of Arora CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of NIKHIL and SRIMAYE ARORA. | H050631 (Santa Clara County Super. Ct. No. 17FL005143) |
| NIKHIL ARORA, Appellant, v. SRIMAYE ARORA, Respondent. | |

Appellant Nikhil Arora (father) and respondent Srimaye Arora (mother) share joint legal custody of their two children.  Father lives in California and mother lives in New Zealand.  For several years, father had primary physical custody during the school year.  Minors' counsel sought an order designating mother the primary custodial parent during the New Zealand school year, based on father interfering with the children's relationship with their mother.  The family court conducted an evidentiary hearing and ultimately made mother the primary physical custodian during the school year.  Father contends on appeal that the family court abused its discretion because neither a substantial change in circumstances nor the factors described in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*) support the court's decision.  For the reasons stated here, we will affirm the custody order.

## I.  FAMILY COURT PROCEEDINGS

Father and mother married in 2008.  Their daughter was born that year and their son in 2012.  They separated in 2015, and father petitioned for dissolution in December 2017.  He also obtained a temporary emergency ex parte order for sole physical and legal custody of the children when mother refused to return the children to California after a visit to New Zealand.  Judgment of dissolution was entered in 2020, with the family court reserving jurisdiction over issues including custody.

The family court entered multiple temporary custody orders between 2018 and 2022.  The court ordered joint legal and physical custody in February 2018.  Parents stipulated in January 2019 that father have sole physical custody "until further order of this court or changed by stipulation."  Mother moved to New Zealand without the children in 2019.  In December 2019, the court denied father's request for sole legal custody; ordered that he have final decision-making authority; and ordered visitation with mother in New Zealand subject to various conditions.  The family court terminated father's final decision making authority in an order filed in January 2022, and granted temporary physical custody to mother to facilitate a vacation in Florida.  And in May 2022 the court granted temporary physical custody to mother for a two-month summer trip to New Zealand.

Minors' counsel moved in May 2022 for a hearing to "consider changing primary custody to Mother."  Minors' counsel declared that father consistently interfered with mother's visitation and communication with the children.  His behavior continued despite an earlier admonition from the court.

After an evidentiary hearing over multiple days, the family court issued a lengthy statement of decision changing primary physical custody to mother.  The court determined a substantial change of circumstances was not required before changing the primary custodial parent because the existing custody orders were temporary.  The court nonetheless went on to find a substantial change of circumstances in that father failed to

2

facilitate the relationship between children and mother and used his position as the primary physical custodian to isolate the children, and he abused his position as the primary physical custodian to make unilateral legal custody decisions for the children without taking mother's opinion into account.

Although the family court questioned the applicability of the *LaMusga* factors given that each parent already resided on a different continent (*LaMusga*, *supra*, 32 Cal.4th 1072), it nonetheless analyzed those factors to decide whether a change in physical custody would be in the children's best interest. As to the children's interest in stability and continuity in the custodial arrangement, the court found the children were doing well academically and socially in father's custody. However, the court found the current custodial arrangement was not stable because father prioritized the children's social activities over time with their mother, and noted court intervention was necessary "each time the children are going to spend time" with mother. As to the distance of the move, the court noted that because parents live on separate continents the children are unable to spend anything other than extended school breaks with the non-primary custodian. It was "clear to the court that Father will not facilitate time between the children and their Mother without court intervention." Minors' counsel argued the reason for the proposed move was to allow the children to have a healthy, consistent relationship with their mother.

The family court noted the parents' son was nine years old and their daughter was 13 years old. Although the children enjoyed good relationships with both parents, the court found the "children have never been given a meaningful opportunity to spend time with their Mother because Father has interfered with that opportunity." Based on written submissions by minors' counsel, the court found that the "children are happy in New Zealand, would be pleased to remain in New Zealand, and would not object to the court making an order for them to remain in New Zealand." The children felt "more comfortable being closer to their Mother in New Zealand as Mother's health conditions

3

continue to make it harder for Mother to travel to see them." (Mother suffers from a lifelong seizure disorder that can be exacerbated by changes in elevation, stress, weather extremes, flashing lights, and sunlight.)

The family court made several findings about the parents' relationship and willingness to put the children's interests over their individual interests. The court acknowledged the custody proceedings originated when mother took the children to New Zealand and did not return them to California until the court ordered her to do so. But the court found credible mother's testimony that she believes it is important for father to be in the children's routine and that she supports co-parenting. The court found mother's testimony demonstrated a better understanding of the need for her and father to share the children. By contrast, father had not "honored the basic premise of joint legal custody, which is that the parents are to have [] meaningful discussions about major custodial decisions for the children." Father "clearly demonstrated" that he believed he had control over all aspects of the children's lives. He did not respect mother's scheduled visitation time with the children, allowing them to be overscheduled during that time.

In its thorough and thoughtful statement of decision, the family court found that father's "lack of ability to work through parenting decisions BEFORE the children are involved in the decision making process is remarkably consistent." The court found father inserted the children in decision making that should have taken place directly between father and mother, and cited two recent examples: during mother's visit to California in May and June 2022, father informed his daughter that she needed to go with mother to get a uniform for a private high school where she had been accepted for the following school year. Mother had previously informed father she could not afford that school's tuition. Father disregarded mother's financial situation and set his daughter's expectations about attending the private school, and did so despite the pending motion seeking to relocate the children to New Zealand for the school year. Father also allowed their son to call mother to ask that she reschedule their flights back to New Zealand to

4

accommodate a school field trip. The court found father "provided no testimony that indicated that he supported Mother's position to [their son] that the flight arrangements had already been made and that it was important that [their son] spend time with his Mother."

The family court ordered that mother have primary physical custody during the New Zealand school year. Parents were ordered to mediation to craft custodial arrangements for school breaks. Mother and father would continue to share joint legal custody.

The family court entered an order confirming its statement of decision in late September 2022.[1] The order acknowledged written argument that had been inadvertently overlooked by the court, and affirmed the earlier statement of decision without substantive change. Father moved for reconsideration, which the family court denied. Father timely appealed.[2]

## II.    DISCUSSION

We address at the outset father's contention that the family court erroneously determined that neither a showing of changed circumstances nor an analysis of the factors identified by the Supreme Court in *LaMusga* was required for the custody change at issue. Given that the family court prophylactically *did* find changed circumstances and *did* address *LaMusga* to the extent relevant to its decision, resolution of the asserted threshold errors is not necessary to our review of the family court's findings and ultimate decision.

---

[1] This September 29, 2022 order, entitled "Order Affirming Statement of Decision Filed on September 21, 2022," was attached to father's amended appellate civil case information statement as the order appealed from, but was not included in the record on appeal. (Some capitalization omitted.) On our own motion, we augment the record on appeal to include that order.

[2] Upon review of the record, we conclude the order appealed from is appealable as an order after judgment. (Code Civ. Proc., § 904.1, subd. (a)(2).) The order to show cause regarding appealability is therefore discharged.

5

## A. CHANGE IN CIRCUMSTANCES

After an initial custody determination, a change in custody must be supported by evidence of a "substantial change of circumstances so affecting the minor child that modification is essential to the child's welfare." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37 (*Burgess*).) The party (or, as here, minors' representative) seeking the change bears the burden of persuasion in the family court. (*Ibid.*) We review the challenged custody order for abuse of discretion, determining "whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*Id.* at p. 32.) Here, because father does not dispute the factual accuracy of the challenged custody order, we accept those facts as true for purposes of our review.

The family court identified two changed circumstances: father's failing to facilitate the relationship between the children and mother; and father abusing his position as the primary physical custodian to make unilateral decisions about the children without considering mother's opinion. "[P]reservation of parental relationships is in the best interest of the child as well as the parent." (*In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 294 (*Ciganovich*).) Father does not challenge the family court's finding that mother's testimony demonstrated "a better understanding of the concept of sharing the children between the parents rather than asserting control over the children to the exclusion of the other parent." Given father's persistent unwillingness to facilitate the children's relationship with mother, the family court could reasonably conclude that a custody modification was essential to the children's welfare.

Father does not contest the accuracy of the family court's findings, but contends that his behavior was not a *changed* circumstance: "[Father's] failure to facilitate communication between the children and [mother] and allegations of interference with custody have been raised by [mother] and [minors' counsel] on several occasions." He also notes that the January 2022 order terminating his final decisionmaking authority was based on a finding that " 'Father has been interfering with the children's relationship with

6

Mother.' " But the changed circumstance was father's *continued* interference despite prior court directives. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 541, fn. 11 ["Conduct by a custodial parent designed to frustrate visitation and communication may be grounds for changing custody."]; *Ciganovich*, *supra*, 61 Cal.App.3d at p. 294 ["a custodial parent's attempt to frustrate the court's order has a bearing upon the fitness of that parent."]; *Burgess*, *supra*, 13 Cal.4th at p. 36, fn. 6 ["Even if the custodial parent is otherwise 'fit,' such bad faith conduct may be relevant to a determination of what permanent custody arrangement is in the minor children's best interest."].)

Father's argument that the family court improperly placed the burden on him to show why custody should not be changed is without merit. Father points to questions the family court posed to father's counsel during a hearing: "What I would want to hear from your client is what he is doing to support the time that these children should have with their mother, and this has been the ongoing issue since the Court became involved with this family"; and "The real issue is: What does he do to make it good for the children to spend time with mom?" We understand the family court's questions as a proper attempt to focus the parties' testimony and argument on the issue to be decided. Nothing in the record indicates the family court improperly shifted the burden of persuasion.

Father appears to contend the family court did not focus on the children's best interest, arguing the court "made it clear that the hearing's purpose was not to determine the children's best interest." He contends the family court indicated it "would focus 'on whether or not each parent is able to support the relationship between the children and the other parent and which parent is better able to do that.' " But that partial quotation does not capture the family court's full statement: "This honestly is not going to turn on the preferences of the children. It is going to turn on whether or not each parent is able to support the relationship between the children and the other parent and which parent is better able to do that." The full statement indicates the family court was discussing the

7

children's preferences, not their best interest. And a parent's willingness to support the relationship between the children and the other parent is relevant to the children's best interest. (*Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 907 ["[O]ne of the key factors the court should address as grounds for modifying custody is the custodial parent's deliberate efforts to impair the children's frequent and continuing contacts with the noncustodial parent."].)

## B. THE *LAMUSGA* FACTORS SUPPORT THE CUSTODY ORDER

In the context of a parent's proposal to change the primary residence of a child, the *LaMusga* court found the following factors relevant: "the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.) Although it was minors' counsel who proposed the custodial change at issue here, the family court found the *LaMusga* factors "instructive in the court's analysis of whether a change in physical custody of the children in this case is in the best interests of the children." We agree with the family court that several of those factors support its ultimate decision.

Central to the family court's analysis was the parents' relationship and willingness to put the children's interests over their individual interests. The court found mother understood the need for the parents to share the children. Father, by contrast, had "not honored the basic premise of joint legal custody, which is that the parents are to have a meaningful discussion[] about major custodial decisions for the children." It was "clear to the court that Father will not facilitate time between the children and their Mother without court intervention." Indeed, the reason minor's counsel proposed a custody

change was to allow the children to have a healthy, consistent relationship with their mother. Both children supported the change, indicating they felt "more comfortable being closer to their Mother in New Zealand as Mother's health conditions continue to make it harder for Mother to travel to see them." Based on those factors, the family court could reasonably conclude that the proposed custody change was in the children's best interest.

On appeal father does not discuss the factors that were central to the family court's order, including that the children supported the custody change and that the purpose of the proposed move was to address father's poor relationship with mother and unwillingness to put the interests of the children over his individual interests. He argues the family court "failed to properly weigh the factors." But the "weight to be accorded to such factors must be left to the court's sound discretion." (*LaMusga*, *supra*, 32 Cal.4th at p. 1093.) Father argues instead that the family court "did not want to hear testimony regarding the children's life in California or the impact that the move might have on them." Father contends the family court "did not focus on any ' "harm that that [*sic*] may result from disruption of established patterns of care and emotional bonds with the primary caretaker." ' " (Quoting *LaMusga*, *supra*, 32 Cal.4th at p. 1093.) But as in *LaMusga*, "there is nothing in the record before us that indicates that the superior court failed to consider the children's 'interest in stable custodial and emotional ties' with" father. (*Id.* at p. 1093.) To the contrary, the court here acknowledged that the children were doing well academically and socially in father's care. The court received information about potential impacts of the move from minors' counsel, who reported that the children supported the custody change.

Father argues the family court "did not comment on the 7,000-mile distance and its impact on the children." But the court acknowledged parents "live on separate continents," with the impact on the children being that they cannot spend anything other than extended school breaks with the parent who does not have primary custody during

9

the school year.  The court found mother would better facilitate time between the children and father.  It also reasoned that the "New Zealand school calendar gives a better opportunity to the court to [e]nsure frequent and continuing contact between the children and their Father" because students there apparently receive a two-week break every eight-to-10 weeks.

### C. THE AUTOMATIC STAY IS MOOT

Mother was granted temporary physical custody for a two-month summer trip to New Zealand, which was to end on August 5, 2022.  After the family court filed a proposed statement of decision in late July 2022 indicating its intention to change physical custody to mother during the New Zealand school year, minors' counsel requested an order that the children be allowed to remain in New Zealand after August 5, 2022.  Minors' counsel argued there was "no good cause or rational reason to further disrupt them by forcing them to return from New Zealand only to go back to New Zealand shortly thereafter in light of the new orders."  The family court vacated the earlier order for the children's return to California, pending its final custody order.  The family court entered an order affirming its statement of decision on September 29, 2022, giving primary physical custody to mother during the school year.

Code of Civil Procedure section 917.7 provides, in relevant part:  "the provisions of the judgment or order allowing, or eliminating restrictions against, removal of the minor child from the state are stayed by operation of law ... for a period of 30 calendar days from the entry of judgment or order."  The family court's September 29, 2022 order affirming its statement of decision allowed the removal of the children from the state.  It was therefore stayed by operation of law for 30 days after that date.  (Code Civ. Proc., § 917.7.)  As father did not seek to extend the stay in the family court or this court, the stay expired in October 2022.  Any challenge to the operation of that stay is moot.

To the extent father challenges the family court's August 2022 order vacating the previous order for the children's return to California on August 6, father has not

10

demonstrated error.  The family court explained in the statement of decision the rationale behind its earlier order for return to California:  "if the children temporarily remained in New Zealand, objections were filed, and the Court of Appeal issued a stay[,] the children would have one trip back to California and could resume the current custodial arrangement with Father pending further direction from the Court of Appeal."  The court wanted to "avoid multiple international flights for the children and multiple transitions for the children while the courts sort out the legal issues."  We see no abuse of discretion in the family court's resolution of a unique situation, made with full recognition of the best interest of the children in avoiding unnecessary international travel.

### III.    DISPOSITION

The September 29, 2022 order granting mother primary physical custody during the New Zealand school year is affirmed.

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Danner, J.

_____

Wilson, J.

H050631
*Arora v. Arora*