[Crim. No. 12276. Fourth Dist., Div. Two. Oct. 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RUDOLFO RODRIGUEZ CUEVAS, Defendant and Appellant.

190

**COUNSEL**

Robert F. Bolinger, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Michael D. Wellington and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TAMURA, J.**—Defendant was convicted of 6 counts of armed robbery in a jury trial and was sentenced to a total of 15 1/3 years. He appeals from the judgment entered pursuant to these convictions on the grounds that he was denied effective representation of counsel at trial and that

his consecutive subordinate sentences were improperly enhanced for firearm use.

Defendant was charged with eight counts of armed robbery by amended information. The People's case against him was based on identifications by victims of, and witnesses to, the robberies. At trial, the People presented 12 witnesses who testified that defendant was the man who had held up 2 restaurants, a glass shop, a bank, a market, and a hardware store where they were patrons or employees. All 12 of the witnesses identified plaintiff in a photo lineup, at his preliminary hearing, and at trial. Seven of the witnesses also identified defendant at an in-person lineup conducted by the police after they had arrested defendant on suspicion of armed robbery.

Defense counsel questioned the People's witnesses fairly closely concerning the accuracy of their identifications and the details of the photo and in-person lineups which they had observed. All of the witnesses testified that no one had made any suggestions to them as to which picture in the photo lineup might be that of the perpetrator of the robbery(ies), that they had not been permitted to consult with other witnesses as to which photo was that of the robber, and that they had not been led to believe that they must pick out the photo which looked most like the robber if they were unable to make a positive identification on viewing the photos. When questioned concerning the in-person lineup, two witnesses stated that they had heard a woman (another witness at the lineup) ask a question which singled out defendant from others in the lineup as the possible perpetrator.[1] Both of these witnesses testified that they were not influenced by this incident, since they had already identified defendant as the robber before the woman spoke. The other five witnesses to the in-person lineup stated that they had heard no comments or suggestions at the lineup which might have influenced them in their identifications. All seven witnesses to the live lineup indicated that they were not permitted to consult with other witnesses at the lineup and that the police did not prompt them in any way concerning their identifications.

---

[1]Neither of these witnesses was the sole witness to the robbery concerning which he or she was testifying. In one case, a restaurant robbery, the robbery had also been witnessed by an offduty police officer who was a customer at the restaurant. The officer identified defendant in a photo lineup, at the preliminary hearing, and at trial, but did not attend the in-person lineup. In the other case, a savings and loan holdup, there were three additional witnesses who made positive identifications and testified at the trial.

The jury returned verdicts of guilty on six of the eight armed robbery counts with which defendant was charged. Defendant was sentenced to five years on count 2, the upper base term for his principal offense (Pen. Code, § 1170.1, subd. (a)), and his principal term was enhanced by two years for firearms use (Pen. Code, § 12022.5). He also received one-third of the middle term for robbery on each of the five subordinate counts and eight months enhancement for firearm use (Pen. Code, § 12022.5) for each count, for a total of eight and one-third years to be served consecutively with the seven-year principal term. (Pen. Code, §§ 1170.1, subd. (a), 667.5, subd. (c)(8).)[2]

On appeal, defendant contends that he was denied effective representation of counsel in that his attorney failed to investigate the circumstances surrounding the in-person lineup and made no motion at

---

[2]At the time of defendant's sentencing, Penal Code section 1170.1, subdivision (a), provided: "(a) Except as provided in subdivision (b) and subject to Section 654, when *any person is convicted of two or more felonies,* whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all such convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667.5 or 667.6. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section 12022, 12022.3, 12022.5, 12022.6, 12022.7 or 12022.8. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements when the consecutive offense is not listed in subdivision (c) of Section 667.5, but shall include one-third of any enhancement imposed pursuant to Section 12022, 12022.5 or 12022.7 when the consecutive offense is listed in subdivision (c) of Section 667.5. In no case shall the total of subordinate terms for consecutive offenses not listed in subdivision (c) of Section 667.5 exceed five years."

Penal Code section 667.5, subdivision (c), provides: "(c) For the purpose of this section, 'violent felony' shall mean any of the following:

"(1) Murder or voluntary manslaughter.

"(2) Mayhem.

"(3) Rape as defined in subdivisions (2) and (3) of Section 261.

"(4) Sodomy by force, violence, duress, menace, or threat of great bodily harm.

"(5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm.

"(6) Lewd acts on a child under 14 as defined in Section 288.

"(7) Any felony punishable by death or imprisonment in the state prison for life.

"(8) Any other felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 on or after July 1, 1977, or as specified prior to July 1, 1977, in Sections 213, 264, and 461, or any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5.

"The Legislature finds and declares that these specified crimes merit special consideration when imposing a sentence to display society's condemnation for such extraordinary crimes of violence against the person."

trial to suppress the identification evidence which was tainted by the improper lineup. He also contends that the enhancement of his consecutive subordinate robbery terms for firearm use pursuant to Penal Code section 667.5, subdivision (c)(8), was improper, citing *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396]. Since we conclude that defendant has not carried his burden of proving the inadequacy of trial counsel, we must affirm the judgment of conviction. However, as we explain below, defendant's sentence was improperly enhanced, so that his case must be remanded to the trial court for resentencing in accord with the views expressed in this opinion.

I

ADEQUACY OF TRIAL COUNSEL

In *People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859], our Supreme Court articulated the analysis to be employed in determining whether a defendant has been denied adequate assistance of counsel: "The burden of proving a claim of inadequate trial assistance is on the appellant. [Citation.] Thus, appellant must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, appellant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. [¶] Once an appellant has met these burdens, the appellate court must look to see if the record contains any explanation for the challenged aspect of representation. If it does, the court must inquire whether the explanation demonstrates that counsel was reasonably competent and acting as a conscientious, diligent advocate. . . . [¶] ■ Where the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for habeas corpus." (*Id.*, at pp. 425-426.)

Recently, in *People v. Nation* (1980) 26 Cal.3d 169 [161 Cal.Rptr. 299, 604 P.2d 1051], our Supreme Court applied the *Pope* analysis to a situation involving an allegedly impermissibly suggestive identification procedure. The high court began by stating that "[i]n order to demonstrate that the alleged incompetency of his trial counsel in not objecting to the identification evidence denied him a potentially meritorious defense, the defendant must present a convincing argument that the pretrial identification procedure 'resulted in such unfairness that it infringed his right to due process' . . . [by] 'giv[ing] rise to a very

substantial likelihood of irreparable misidentification.'" (*Id.*, at p. 179, quoting *Stovall* v. *Denno* (1967) 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1205, 87 S.Ct. 1967], and *Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) The *Nation* court then reviewed the critical facts, noting that three witnesses to the crime had viewed mug shots together, and had consulted with each other in selecting the defendant's picture. These witnesses testified that they felt constrained to select the assailant from one of the pictures shown them, so they consulted together and chose the photo which looked most like the perpetrator. One of these witnesses was then allowed to take the picture home with her and keep it for a week. During this time she showed the mug shot to her mother, who agreed it was the same man who had made a lewd remark to her prior to the crime. It was the mother, who had seen only the picture brought home by her daughter, who identified defendant in a subsequent in-person lineup. Based on these facts, the court concluded that the picture lineup was so impermissibly suggestive as to deny defendant due process of law, that the live lineup identification was tainted by this denial of due process, and that the appellant had carried his burden of showing that trial counsel's failure to object to the introduction of the identification evidence deprived him of a potentially meritorious defense and thus of his right to constitutionally adequate assistance. (*People* v. *Nation, supra*, 26 Cal.3d 169, 181.)

In the case at bench, defendant argues that the in-person lineup was impermissibly suggestive because two witnesses heard a third witness ask a question which suggested that defendant was the robber. He maintains that counsel erred in failing to investigate the circumstances of the live lineup and also in failing to move to exclude the identification evidence as tainted by the denial of due process at the in-person lineup.[3] In contrast to the Supreme Court's review of *Nation*, however, our analysis of the facts in the instant case reveals neither impermissible suggestiveness denying defendant due process, nor failure to pursue a potentially meritorious defense. The picture lineups were conducted with scrupulous care to avoid any denial of due process: witnesses viewed the mug shots separately, were not allowed to consult with each

---

[3]Defendant also contends that the fact that the six men who appeared in the live lineup were not the same six men who were used in the photo lineup should be in itself a reason for suppressing the live lineup evidence. This is not now the law, as defendant acknowledges, and we fail to see what process the police could utilize to compel people not in custody or suspected of a crime to appear in a lineup to aid them in their investigation.

other, and were not prompted in any way by the police. All the witnesses testified that they had not felt obliged to pick out a picture that looked most like the robber if they could not make a positive identification. The live lineup, too, was conducted so as to avoid due process problems. Witnesses were not allowed to consult with each other, and the police made no suggestions as to who the suspect might be. Two witnesses did overhear a third viewing witness ask a question which indicated which man in the lineup she thought to be the robber. However, both these witnesses testified that they had picked out defendant before they overheard the comment, and neither of these witnesses was the sole identifying witness of the robberies of which they had been victims. In both cases, defendant was also identified at trial by witnesses who had picked him in the picture lineup but had not attended the live lineup. Given the number of positive identifications of defendant which were not dependent in any way on the inadvertent suggestion made to two witnesses at the in-person lineup, we cannot conclude that in failing to move to exclude the identifications possibly tainted by suggestion, defense counsel failed to raise a potentially meritorious defense. Thus, defendant has not carried the burden articulated in *People* v. *Pope, supra*, 23 Cal.3d 412, 425, of proving inadequacy of trial assistance.

## II

### ENHANCEMENT OF CONSECUTIVE SUBORDINATE SENTENCES

Defendant contends that the use of Penal Code section 667.5, subdivision (c)(8), to enhance his consecutive subordinate robbery sentences for use of a firearm was improper under the rule of *People* v. *Harvey, supra*, 25 Cal.3d 754. He points out that in *Harvey* our Supreme Court held that in setting forth the procedures for consecutive sentences in former Penal Code section 1170.1, subdivision (a), the Legislature did not intend to include Penal Code section 667.5, subdivision (c)(8). The court explained that it so interpreted section 1170.1, subdivision (a), because to construe the statute to include section 667.5, subdivision (c)(8), "would permit enhancement for firearm use *in any case involving firearm use*, thereby seeming to render wholly unnecessary the section's specific statutory reference to the various violent felonies described in section 667.5, subdivision (c)." (Original italics; *id.*, at p. 761.) We conclude that under *Harvey* defendant's consecutive subordinate sentences were indeed improperly enhanced utilizing Penal Code section 667.5, subdivision (c)(8).

The People contend, however, that it would not be an ex post facto application of the law to apply the newly amended Penal Code section 1170.1, subdivision (a), urgency effective May 29, 1980, to the enhancement of defendant's consecutive subordinate sentence. The amended section provides in pertinent part: "The subordinate term for each consecutive offense which is a 'violent felony' as defined in subdivision (c) of section 667.5, including those offenses described in paragraph (8) of subdivision (c) of section 667.5, shall consist of *one-third of the middle term* of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of any enhancements imposed pursuant to Sections 12022, 12022.5, and 12022.7." (Stats. 1980, ch. 132, p. 305, emergency eff. May 29, 1980.)

The People acknowledge that a statute which ""''renders a previously innocent act criminal, aggravates, or increases the punishment for, a crime, alters the rules of evidence, penalizes an innocent act while assuming to regulate civil rights and remedies, deprives an accused of some protection or defense previously available, or alters his situation to his disadvantage,''"" is an ex post facto law, quoting this court's opinion in *In re Bray* (1979) 97 Cal.App.3d 506, 511-512 [158 Cal.Rptr. 745], italics deleted. They maintain, nevertheless, that amended section 1170.1, subdivision (a), does not increase the punishment for defendant's crimes or place him at a disadvantage because in the amending statute the Legislature declares that section 1170.1, subdivision (a), as initially effective in 1977, was always intended to include enhancements under Penal Code section 667.5, subdivision (c)(8).[4] Since the Legislature always intended that enhancements such as those imposed in defendant's case be applied, the defendant was always subject to those enhancements as clearly expressed in sections 1170.1, subdivision (a), and 667.5, subdivision (c)(8). In *Harvey*, say the People, our Supreme Court "purported to change the totally unambiguous language" of section 667.5, subdivision (c)(8); the Legislature by acting quickly to amend section 1170.1, subdivision (a), told our highest court that it had "infringed on the Legislature's role by altering the language of [Pen. Code, § 667.5, subd. (c)(8)], and ignoring the clear expression of legislative intent." Thus, they argue that since the meaning of the statute has always been the same, application of the amended statute to defen-

---

[4]Statutes 1980, chapter 132, section 1, subdivision (c), page 305, provides: "This act is intended to clarify and reemphasize what has been the legislative intent since July 1, 1977."

dant will not violate the tenets of ex post facto doctrine, citing *Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200 [114 P.2d 592], for support. As we explain below, we conclude that the People's contention is meritless.

■ Chief Justice Marshall, writing in *Marbury* v. *Madison* (1803) 5 U.S. 137, 177 [2 L.Ed. 60, 73], set out clearly and simply the role of the judiciary in American jurisprudence: "It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule." The California courts have been equally forthright in expressing the courts' role in the legal process: "The ultimate interpretation of a statute is an exercise of the judicial power." (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935]; *People* ex rel. *Dept. Pub. Wks.* v. *Ryan Outdoor Advertising, Inc.* (1974) 39 Cal.App.3d 804, 810 [114 Cal.Rptr. 499]; *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 578 [108 Cal. Rptr. 293].) And our Supreme Court has succinctly stated the part which it, as the highest court of the state, must play in this process: "[I]t is the duty of this court, when such a question of law is properly presented, to state the true meaning of the statute *finally and conclusively ....*" (*Bodinson Mfg. Co.* v. *California E. Com., supra,* 17 Cal. 2d 321, 326, italics added.)

■ In line with the well-established rule that statutory interpretation is a judicial function, the courts have consistently held that "declaratory or defining statutes are to be upheld... as an exercise of the legislative power to enact a law for the future." (*Matter of Coburn* (1913) 165 Cal. 202, 210 [131 P.352]; *Cal. Emp. Stab. Com.* v. *Chichester etc. Co.* (1946) 75 Cal.App.2d 899, 901 [172 P.2d 100]; see e.g., *Stebbins* v. *Commissioners of Pueblo County* (8th Cir. 1880) 4 F. 282, see also, *Singer Manuf'g Co.* v. *M'Collock* (8th Cir. 1884) 24 F. 667.) Thus, the Legislature "may not revise the operation of an existing law in the form of an amendatory statute to affect past transactions." (*Cal. Emp. Stab. Com.* v. *Chichester etc. Co., supra,* 75 Cal.App.2d 899, 901, citing *Matter of Coburn, supra,* 165 Cal. 202, 210.) ■ Further, our courts have concluded that subsequent legislation passed to clarify a statute "merely supplies an indication of legislative purpose which may be considered together with other factors in arriving at the true intent existing at the time the statute was enacted." (*In re Marriage of Paddock* (1971) 18 Cal.App.3d 355, 360 [95 Cal.Rptr. 652]; *Stockton Sav. & Loan Bank* v. *Massanet, supra,* 18 Cal.2d 200, 204;

*Flewelling* v. *Board of Trustees* (1960) 178 Cal.App.2d 168, 172 [2 Cal.Rptr. 891].)

■ Applying these precepts to the case at bench, we think it is apparent that to apply Penal Code section 1170.1, subdivision (a), as amended, to enhance defendant's sentence would be application of an ex post facto law. In *People* v. *Harvey, supra,* 25 Cal.3d 754, our Supreme Court determined finally and conclusively that Penal Code section 1170.1, subdivision (a), as then written did not include Penal Code section 667.5, subdivision (c)(8) in its purview. The legislative clarification in the amended statute may not be used to overrule this exercise of the judicial function of statutory construction and interpretation. The amended statute defines the law for the future, but it cannot define the law for the past. The People apparently maintain that *Stockton Sav. & Loan Bank* v. *Massanet, supra,* 18 Cal.2d 200, stands for the proposition that an amended statute passed to remove ambiguity from a predecessor statute can be applied to past transactions because the meaning of the statute has always been the same. In *Stockton,* however, the Supreme Court actually held that the "reenacted" statute was not binding upon the court in its construction of the earlier act, though it was a factor to be considered in determining the meaning of the language of the act. (*Id.,* at p. 204.)

### DISPOSITION

The judgment of conviction is affirmed and the case is remanded to the trial court for resentencing pursuant to the rule of *People* v. *Harvey, supra,* 25 Cal.3d 754.

Gardner, P. J., and McDaniel, J., concurred.