[Civ. No. 21126. Third Dist. Sept. 16, 1982.]

CHERYL DEL COSTELLO, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

James H. Harrington for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Matthew P. Boyle, Deputy Attorney General, for Defendants and Respondents.

OPINION

**BLEASE, J.**—Cheryl Del Costello expected to receive $515 as a refund for overpayment of her state income taxes for 1979. In lieu of the check she found the money had been applied to offset an amount due to the state as a result of a judgment obtained against her for reimbursement of sums paid through the aid to families with dependent children program (AFDC). The funds supported her daughter, a minor, when she was living apart from plaintiff in the custody of the child's grandmother. Plaintiff filed a class action to remedy the perceived injustice of this procedure. Defendants, the State of California and the Franchise Tax Board (state), successfully demurred. Plaintiff declined to amend her pleading and judgment of dismissal was entered. She appeals. We affirm the judgment.

DISCUSSION

I

The amount of the judgment was withheld from plaintiff's income tax refund under the authority of a statute which permits the Controller to

"offset any amount due a state agency from a person ... against any amount owing such person ... by any state agency." (Gov. Code, § 12419.5.)[1] Plaintiff argues that withheld taxes remain the property of the wage earner until the actual tax liability is determined. She claims that overpayment remaining after the tax liability is satisfied is held in trust by the state and offsetting this trust res against the state's claim violates the fiduciary obligations of the state, as trustee. We reject the claims. We hold that where, as here, the AFDC obligation has been reduced to a judgment[2] it is an "amount due" the state and may be offset by the amount of any income tax refund owing the taxpayer.[3]

## II

■ The state contends the claim of the Department of Social Services is an "amount due" a state agency because Welfare and Institutions Code section 11477[4] *currently* provides that an application for

---

[1]The text of this statute in 1979 and 1980 is: "The Controller may, in his discretion, offset any amount due a state agency from a person or entity, against any amount owing such person or entity by any state agency. The Controller may deduct from the claim, and draw his warrants for the amounts offset in favor of the respective state agencies to which due, and, for any balance, in favor of the claimant. Whenever insufficient to offset all amounts due state agencies, the amount available shall be applied in such manner as the Controller, in his discretion, shall determine. If, in the discretion of the Controller, the person or entity refuses or neglects to file his claim within a reasonable time, the head of the state agency owing the amount shall file the claim on behalf of such person or entity; if approved by the Controller it shall have the same force and effect as though filed by such person or entity. The amount due any person or entity from the state or any agency thereof is the net amount otherwise owing such person or entity after any offset as in this section provided." (Stats. 1951, ch. 350, § 1, pp. 800-801.)

[2]We need not address the serious questions which arise if the offset statute is sought to be applied to a claim for unliquidated damages. Since unliquidated claims are not generally available in law as a setoff, they might fall outside the ambit of "amount due" as used in the section 12419.5. (See 15 Cal.Jur.3d, Counterclaim and Setoff, § 6, pp. 785-786; see also *Corbett* v. *Widber* (1898) 123 Cal. 154, 156-157 [55 P. 764].)

[3]We find no merit in the plaintiff's due process claim. She admits the debt. She does not challenge the sufficiency of the procedures to insure that only valid claims are offset or deducted, or to insure that no duplicate enforcement of the judgment occurs as a result of simultaneous collection activity by the county that obtained the judgment. She does not seek traditional procedural due process relief, i.e., notice and a hearing prior to offset. We fail to understand what further process is due. However, we do not imply an opinion concerning the validity of the administrative procedures used to enforce Government Code section 12419.5. (See *Beaudreu* v. *Superior Court* (1975) 14 Cal.3d 448 [121 Cal.Rptr. 585, 535 P.2d 713].)

[4]Welfare and Institutions Code section 11477, in relevant part, currently provides: "As a condition of eligibility for aid paid under this chapter, each applicant or recipient shall:

"(a) Assign to the county any rights to support from any other person such applicant

AFDC benefits operates as an assignment by law to the *state* of the child's "rights to support."[5] This provision was not added to the statute until 1980 and is not controlling.

The claim was reduced to judgment in favor of the county and the judgment provides the basis for the setoff. ■ However, a person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of the judgment as though he were a party. A person is represented by a party if the party is an agency invested by law with authority to represent the person's interests. (Rest.2d Judgments, § 41, p. 393; and illus. *d.* at p. 397.) Such a relationship exists here.

AFDC is a grant-in-aid program established by the federal government. (See generally 51 Cal.Jur.3d, Public Aid and Welfare, §§ 10-19, pp. 421-437.) It is governed in sequential hierarchy by federal statutes, federal regulations, state statutes, and state regulations. (See *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 739 [97 Cal.Rptr. 385, 488 P.2d 953].) The counties administer the AFDC program for the state in California, as the agents of the state. (See *Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 906-908 [141 Cal.Rptr. 133, 569 P.2d 727]; *County of Marin* v. *Martin* (1974) 43 Cal.App.3d 1, 3-4 [117 Cal.Rptr. 364].) In particular, the counties are charged with the duty of enforcing child support laws as agents of the state. (Welf. & Inst. Code, §§ 11475-11476.) This relationship establishes the state's right to enforce the judgment obtained by the county against plaintiff by resort to the offset statutes (See also Rest.2d Agency, § 292, pp. 19-20.)

### III

■ Plaintiff claims that the tax refund is not an "amount owing" to the taxpayer because it is money held in trust for the taxpayer. She relies upon *Bonelli* v. *State of California* (1977) 71 Cal.App.3d 459 [139 Cal.Rptr. 486] in which the widow of a former state official sought to

---

may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at the time such assignment is made. Receipt of public assistance under this chapter shall operate as an assignment by operation of law. *An assignment of support rights to the county shall also constitute an assignment to the state.*" (Italics added.) (Stats. 1979, ch. 1030, § 13.)

[5]The phrase "rights to support" encompasses a judgment. (*In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 296 [139 Cal.Rptr. 349]) Accordingly, the 1979 amendment to section 11477 works an assignment of the judgment to the state.

compel payment of an income tax refund held by the state as an offset against sums allegedly due the state because of bribes received by the official. The court said the offset statute did not apply. It reasoned the refund was the "property of the Bonellis' held in trust for them by the state," and was not therefore an "amount owing ... by any state agency ...." (*Id.*, at p. 469.) We distinguish *Bonelli* on its facts.

Trust is a legal term that encompasses two dissimilar concepts, express trust and constructive trust.[6] An express trust arises from the intention of the parties to set aside property under the stewardship of a trustee for the benefit of the beneficiary. It establishes a fiduciary relationship. A constructive trust does not. It is imposed by a court of equity, independent of the intention of the parties, to prevent a party in possession of property from being unjustly enriched. (Scott, *ante*, fn. 6.)

The court in *Bonelli* left open the question of the character of the trust upon which its holding was premised. (*Id.*, at p. 466, fn. 4.) However, its statement that the Controller violated the state's "trusteeship obligations" by withholding payment of the tax refund evidences an express trust. (*Id.*, at p. 469.) Its suggestion of a fiduciary duty is inconsistent with a constructive trust. We find further support in the facts. Prior to Mrs. Bonelli's suit, the Controller notified her he had set aside her tax refund and was holding the funds in trust for her. (*Id.*, at p. 465.) Thus, two essential elements of express trust were present. There was an establishment of a trust res from the undifferentiated funds in the treasury. (Cf. *In re Lamb* (1923) 61 Cal.App. 321, 328 [215 P. 109] ["To the creation of a trust, a trust-*res* or subject matter is a *sine qua non*"]; *Eaton* v. *City of Los Angeles* (1962) 201 Cal.App. 2d 326, 332 [20 Cal.Rptr. 456] ["In an express voluntary trust there must be a subject or trust res, i.e., the trustor must set aside some specific real or personal property."].) Second, there was an acknowledgement of the trust by the putative trustee. (See Civ. Code, § 2222.)[7] Since the Controller had established an express trust, he was precluded from offsetting the trust res as an "amount owing" pursuant to the setoff statute, by his obligations as trustee.

---

[6]See 4 Scott on Trusts (2d ed. 1956) (Scott) Constructive Trusts, section 462.1. The California law of trusts emanates from Civil Code sections 2215-2244. The statutory term for an express trust is a voluntary trust and constructive trusts fall within the statutory term involuntary trust. On constructive trusts, see generally Scott, *supra*, section 461 et seq.; Restatement of Restitution sections 160-179.

[7]Civil Code section 2222 provides: "Subject to the provisions of Section 852, a voluntary trust is created, as to the trustee, by any words or acts of his indicating, with

*Bonelli* does not answer the generic question, are all tax refunds held in trust? "A case is not authority for propositions not presented or *considered.*" (Italics added.) (*Brokopp* v. *Ford Motor Co.* (1977) 71 Cal. App.3d 841, 851 [139 Cal.Rptr. 888, 93 A.L.R.3d 537].) Here, there was no acknowledgement of a trust or segregation of a trust res. ██ We review the statutes afresh to determine if they establish an express trust or create a circumstance in which a constructive trust should be equitably imposed.[8] If either obtains, a tax refund is perforce excluded from offset.

## IV

 Express or voluntary trusts ordinarily occur in the context of relations between private entities. However, no doctrinal barrier prevents a government entity from mandating an express trust via statutory enactment. (See e.g., Gov. Code, § 20758; cf. *Eaton, supra,* 201 Cal.App.2d 326.) We can conceive of a tax withholding system which functions as an express trust, though it would create serious economic consequences for the state.

---

reasonable certainty: [¶] 1. His acceptance of the trust, or his acknowledgement, made upon sufficient consideration, of its existence; and, [¶] 2. The subject, purpose, and beneficiary of the trust."

[8]The Attorney General asks that our analysis be foreshortened by application of an amendment of Government Code section 12419.5 in 1980 which provides that: "For purposes of this section, an amount owing to a person or entity by any state agency shall include any tax refund." It further provides interpretive language; "The Legislature hereby finds that as a result of the court decision in Bonelli v. State of California (1977) 71 Cal.App.3d 459, some confusion has arisen concerning the character of tax refunds. This Legislature hereby declares that such tax refunds held or owing have the characteristics of a simple debt and do not create a trust relationship between the taxpayer and the state. The Legislature further declares that the provisions of Government Code Section 12419.5 as amended by this act are a clarification and a declaration of existing law." (Stats. 1980, ch. 572, §§ 1-2, p. 1562.) The Attorney General claims that we are constrained to accept the amendment as a definitive interpretation of the section. We disagree. The Legislature has no authority to interpret a statute. That is a judicial task. The Legislature may define the meaning of statutory language by a present legislative enactment which, subject to constitutional restraints, it may deem retroactive. But it has no legislative authority simply to say what it *did* mean. Courts do take cognizance of such declarations where they are consistent with the original intent. "[A] subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act. [Citations.]" *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210, 213-214 [187 P.2d 702].) The Legislature may also, as it did here, define the term "amount owing" "'as an exercise of the legislative power to enact a law for the future.' [Citations.]" (*People* v. *Cuevas* (1980) 111 Cal.App.3d 189, 199 [168 Cal.Rptr. 519]). Our task is to discern the intent of the statute from its applicable language and context. Felicitously, our analysis leads us to concurrence with the Legislature's declaration.

The paramount measure of an express trust is the intention of the parties. (See Civ. Code, §§ 2221-2222.) That must be discerned either by statutory declaration, or the inference of its presence from any indicia of a trust relationship present in the statutory scheme. A review of statutes governing income tax withholding and refunds reveals no intention to establish an express trust. There is no statutory declaration of trust. Nor are there present any criteria which distinguish a trust from a debtor-creditor relationship. (See *Petherbridge* v. *Prudential Sav. & Loan Assn.* (1978) 79 Cal.App.3d 509, 517-518 [145 Cal.Rptr. 87].)

The employer withholds the appropriate sum from the wages of the employee. It pays that sum to the Franchise Tax Board as a *tax*. (Rev. & Tax. Code, §§ 18805-18806.) The board deposits its receipts in the treasury and the money becomes immediately available for use by the state in meeting its obligations. If at the end of the year the tax liability is determined to have been overpaid, the wage earner may apply for a refund. (Rev. & Tax. Code, §§ 18820, 19051 et seq.) This is normally accomplished by requesting on the tax return that the amount overpaid be refunded. (See Cal. Admin. Code, tit. 18, §§ 18805(e) and 19064(a).) The overpayment is offset against state income taxes due from the taxpayer for other years. (Rev. & Tax. Code, § 19051.) No interest is paid on the amount overwithheld unless the board is dilatory in making the refund. (See Rev. & Tax. Code, § 19062.11.)

There is not the slightest evidence of an intention to create an express trust. Where the payment of money is intended to create a trust, the payor retains the beneficial interest in the money paid; the payee may not use the money for his own purposes; he must keep the money separate from his own; and generally has a duty to invest the money and make it productive for the payor. (*Petherbridge, supra,* 79 Cal.App. 3d at pp. 517-518.) The money collected by the wage withholding scheme is not the property of the wage earner held in an express trust by the state. Rather, it is the state's property when levied and the wage earner has a correlative property right to recover any amount overpaid.[9]

---

[9] In light of this conclusion, we summarily reject the contention that failure to make a tax refund is a violation of plaintiff's constitutional right to acquire, possess and protect property. In offsetting a tax refund, the state is not failing to return her property, i.e., the wages she earned. It is offsetting an obligation of the state with a judgment which it may enforce.

## V

Nor is this an appropriate case for imposition of a constructive trust. By statute a constructive trust may be imposed if the state has wrongfully detained the tax refund, or gained it by accident, mistake, or other wrongful act in the absence of a better right to it than plaintiff. (Civ. Code, §§ 2223-2224.) As related previously, a constructive trust is an equitable remedy imposed to prevent unjust enrichment. But, the plaintiff's equities are not compelling.

She contends that upholding the state's conduct may lead to abusive manipulation of the tax system to generate overwithholding in order to offset a wide variety of dubious state agency claims. However, her complaint does not allege any such abuse; neither do we perceive that a decision in the state's favor would induce a slide down the slippery slope she postulates. There is no wrongful conduct by the state in this case.

Plaintiff has admitted the propriety of the judgment that she owes the debt. This admission subsumes the proposition that she was accorded due process in the determination of the debt. No issue of double recovery is presented. The judgment incorporates the premise she failed to support her daughter when she had the ability to do so and thereby made necessary the expenditure of public funds. We find nothing inequitable in allowing the state to recoup in this fashion.

The judgment is affirmed.

Regan, P. J., and Carr, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 24, 1982. Newman, J., did not participate therein.