[Civ. No. 21851. Third Dist. May 31, 1983.]

ROBERT H. SHARPE, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
EILEEN L. BERONIO, Real Party in Interest.

COUNSEL

Hardy, Erich & Brown, Weintraub, Genshlea, Hardy, Erich & Brown, John Quincy Brown, Jr., and Robert B. Zaro for Petitioner.

No appearance for Respondent.

Rogers & Stevens and James L. Stevens, Jr., for Real Party in Interest.

**OPINION**

**BLEASE, J.**—Robert Sharpe seeks a writ of mandate compelling the trial court to grant a motion for judgment on the pleadings. We issued an alternative writ and stayed further proceedings.

Sharpe is the defendant attorney in Eileen Beronio's legal malpractice action. She claims Sharpe negligently failed to obtain a community property share of her ex-spouse's vested military retirement pension in a 1968 family law proceeding. She sought and was denied a share in a later action on the basis of the intervening decision of *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728].

Sharpe contends he is entitled to assert federal law, as interpreted by *McCarty*, as a bar to her malpractice action. We agree.

*Facts*

Sharpe represented Mrs. Beronio in a 1968 action for separate maintenance. She obtained a judgment incorporating a property settlement agreement which made no provision for disposition of the pension attributable to the service of her spouse in the United States Air Force. In 1977 Mrs. Beronio filed a second action seeking division of the pension. Mr. Beronio countersued for dissolution of the marriage. In the same action Mrs. Beronio alternatively sought damages from Sharpe for alleged malpractice in failing to obtain a share of the pension in the 1968 action. The actions were severed.

The marriage was dissolved but Mrs. Beronio's claim to a share of the pension was denied. The judgment was appealed. In the course of the appeal the United States Supreme Court decided *McCarty*, which was applied, by stipulation of the parties, to defeat Mrs. Beronio's claim.

Sharpe then sought and was denied a judgment on the pleadings in the severed malpractice action. The trial court reasoned the issue was whether Sharpe had been negligent at the time he represented Mrs. Beronio in 1968 and by that measure the subsequent *McCarty* decision is not dispositive.

This writ proceeding followed.

*Discussion*

I

On the record before it the trial court acted correctly in denying the motion for judgment on the pleadings. Mrs. Beronio's complaint alleges Sharpe

negligently failed to discover and obtain for her a community property share in numerous insurance policies and the former family residence as well as the military pension. Regardless of the merit of Sharpe's *McCarty* claim, Mrs. Beronio's complaint states a cause of action for the loss of items other than the pension. (See generally 1 Cal. Civil Procedure: Before Trial (Cont.Ed.Bar 1977) ch. 13, Motions for Judgment on the Pleadings, pp. 447-460.)

However, Mrs. Beronio opposed the motion as if it were a motion for partial summary adjudication of the issues concerning the pension right. Similarly, the trial court premised its ruling solely on a rejection of Sharpe's *McCarty* contention. We will disregard the defect of form and review the matter as the parties treated it. (See Civ. Code, § 3528.) Expeditious resolution of the merits of Sharpe's claim will spare the parties time and expense and may provide guidance to other litigants on a novel question that may recur in the wake of *McCarty*. (Cf. *Beech Aircraft Corp.* v. *Superior Court* (1976) 61 Cal.App.3d 501, 521 [132 Cal.Rptr. 541].)

## II

 Sharpe contends the *McCarty* interpretation of the federal military pension statutes applies to establish the federal law applicable to the 1968 action. Since by that law Mrs. Beronio had no entitlement to a share of Mr. Beronio's pension, there could be no malpractice. Mrs. Beronio responds that *McCarty* should not be applied to absolve Sharpe from responsibility for antecedent malpractice. She relies upon decisions that have declined to afford *McCarty* full retroactive effect: *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17 [176 Cal.Rptr. 274]; *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371 [177 Cal.Rptr. 380], mod. 125 Cal.App.3d 415f; *In re Marriage of Fellers* (1981) 125 Cal.App.3d 254 [178 Cal.Rptr. 35]. We agree with Sharpe. The reasons for these decisions do not extend to this case.

*Sheldon* and *Mahone* declined to allow the protesting military spouse to undo a judgment incorporating a *stipulation* allocating his military retirement benefits as a community property asset where the judgment was pending on appeal when *McCarty* was decided. *Fellers* declined to allow reopening of a judgment which was final prior to *McCarty*. Each of these decisions is premised upon the settled expectations of the parties, via principles of contract (*Sheldon*; *Mahone*) or res judicata (*Fellers*). These situations do not obtain here. Mrs. Beronio is neither the beneficiary of an agreement or a final judgment granting her a community property interest in Mr. Beronio's pension.

Mrs. Beronio's theory is, rather, she would have been such a beneficiary had Sharpe in 1968 perceived the development of *California* case law (*In re Mar-*

*riage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449]).[1] Why Sharpe should not then have also perceived *McCarty*'s subsequent interpretation of federal law invalidating the California case law is not explained. Rather, Sharpe is charged with malpractice for having failed to have a temporally "correct" vision of the case law and, by not obtaining a judgment predicated upon such law, to have failed to put Mrs. Beronio in a position of invulnerability from the correct law. We do not subscribe to such a nearsighted refraction of professional vision.

*McCarty* informed us prior California *case law* (*In re Marriage of Fithian, supra*) discerning a community property right in military retirement pensions, was in violation of federal statutes. "We conclude . . . that there is a conflict between the terms of the federal retirement statutes and the [California] community property right asserted . . . ." (453 U.S. at p. 232 [69 L.Ed.2d at p. 605].) *McCarty* is declaratory of the meaning of federal statutes which were in effect at the time of Sharpe's alleged negligence. By that law Mrs. Beronio never had a property right in her ex-spouse's military pension capable of being forfeited. She has no vested right in erroneous California case law, which might have been applied to her claim had it been timely raised. The principles of res judicata that insulate a final, albeit erroneous, judgment from relitigation provide no relief. (See generally Rest.2d Judgments, § 17, pp. 148-151.) Mrs. Beronio had no judgment giving her rights in Mr. Beronio's pension.

The trial court relied upon *Smith* v. *Lewis, supra,* 13 Cal.3d at page 356 for a contrary conclusion. *Smith* holds the standard of care of a lawyer is premised on the state of the law at the time of the alleged malpractice.[2] This holding provides no solace for Mrs. Beronio. It assumes trial counsel misperceived the correct law and addresses the issue whether that misperception was the result of professional negligence. We now know the correct law, applicable in 1968, was as interpreted by *McCarty*. Hence the best that Mrs. Beronio can say is that Sharpe inadvertently applied the correct law. That Sharpe, measured by *Fithian*, failed to research the community property status of federal military

---

[1]The status of such military pension rights was unsettled in 1968. (See *Smith* v. *Lewis* (1975) 13 Cal.3d 349, 358 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].) Zealous advocacy might have established their community property character. (See *In re Marriage of Fithian, supra.*) Alternatively, equally zealous counteradvocacy might have precipitated an earlier *McCarty* ruling.

[2]"We cannot, however, evaluate the quality of defendant's professional services on the basis of the law as it appears today. In determining whether defendant exhibited the requisite degree of competence in his handling of plaintiff's divorce action, the crucial inquiry is whether his advice was so legally deficient *when it was given* that he may be found to have failed to use 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685].) We must, therefore, examine the indicia of the law which were readily available to defendant at the time he performed the legal services in question." (Italics added.) (*Smith* v. *Lewis, supra,* 13 Cal.3d at p. 356.)

retirement benefits is irrelevant. It is not malpractice for Sharpe to have failed to discover and apply erroneous case law. There is no such cause of action.

### III

We need make but brief comment on the effect upon Sharpe's duty of the Uniformed Services Former Spouses' Protection Act. (Pub.L. No. 97-252 (Sept. 8, 1982) 96 Stats. 730, 1982 U.S. Code Cong. & Admin. News, No. 8a.) There is none.

*McCarty* interpreted federal statutes. That interpretation expresses the definitive meaning of the statutes. "It is emphatically the provision and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule." (*Marbury* v. *Madison* (1803) 5 U.S. 137, 177 [2 L.Ed. 60, 73]; see also *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 326 [109 P.2d 935]; *People* v. *Cuevas* (1980) 111 Cal.App.3d 189, 199-200 [168 Cal.Rptr. 519]; *Del Costello* v. *State of California* (1982) 135 Cal.App.3d 887, 893, fn. 8 [186 Cal.Rptr. 582]; *County of Sacramento* v. *State of California* (1982) 134 Cal.App.3d 428, 433, fn. 5 [184 Cal.Rptr. 648].)

*McCarty* may thus be affected only by a subsequent enactment. To alter the judicial interpretation of a statute the Legislature must alter the statute. (See *Cuevas, supra*; *Del Costello, supra*; *County of Sacramento* v. *State of California, supra*.) That was accomplished, to an extent we do not examine, by the Uniformed Services Former Spouse's Protection Act.[3]

---

[3]Section 1002, subdivision (a) of the act added section 1408 to title 10 of the United States Code. Subsection (c)(1) provides: "(c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." The committee report accompanying the measure explains the purpose of subsection (c)(1) as follows: "The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisable. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision." (*Ibid.*, p. 1611, legislative history, Sen. Rep. No. 97-502.) The act adopted was expressly intended to have retroactive effect. We intimate no opinion on the nature or extent of its retroactive effect or whether it provides Mrs. Beronio with an independent ground of entitlement to a share in Mr. Beronio's pension.

 Sharpe's duty was to take reasonable measures to determine the law in 1968. As we have said, *McCarty* fixed the meaning of that law. Whatever his professional defects in research or vision, if any, *McCarty* resolved the substantive issue of Mrs. Beronio's legal entitlement and thereby precluded Sharpe's liability. Sharpe had no duty *in 1968*[4] to foresee that a 1982 federal legislative enactment might be interpreted to retroactively[5] affect the statutes applicable in 1968. That would raise prescience to Delphic heights. There is no such standard of professional accountability.

### *Disposition*

Because the trial court correctly declined to grant judgment on the pleadings, Sharpe is not entitled to the writ for which he petitions. The trial court will be guided by the views expressed herein in any further proceedings in this case. Accordingly, the alternative writ and the order staying further proceedings have served their purposes and are respectively discharged and dissolved. The petition is denied and the alternative writ and stay of proceedings are discharged.

Puglia, P. J., and Sparks, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied August 25, 1983. Kaus, J., and Grodin, J., were of the opinion that the petition should be granted.

---

[4]We intimate no view whether, in some circumstances, an attorney is legally chargeable with anticipation of legislative action affecting his client's interests.

[5]We express no view on the extent to which the act is retroactive.