[Civ. No. 24384. Third Dist. Apr. 1, 1986.]

COUNTY OF YOLO, Plaintiff and Respondent, v.
MELVIN WILLIAM FRANCIS, JR., Defendant and Appellant.

COUNSEL

Steven A. Geringer, under appointment by the Court of Appeal, for Defendant and Appellant.

David C. Henderson, District Attorney, and William C. Schemel, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

SIMS, J.—Welfare and Institutions Code section 11350[1] and Civil Code section 248 allow a county to seek reimbursement from a noncustodial par-

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

ent when public assistance is paid to support a child. Section 11350 limits the noncustodial parent's liability to his or her "reasonable ability to pay" during the period aid was granted to the child. In this case, we conclude an unemployed parent's reasonable ability to earn income from work may be considered in determining the parent's "reasonable ability to pay."

Defendant contends the trial court erred as a matter of law in ordering him to reimburse Yolo County for support paid for his child, because at all times defendant was unemployed and received his sole income from Sacramento County pursuant to a grant for aid to families with dependent children (AFDC). We disagree with defendant's contention and shall affirm the judgment (order).

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On March 30, 1982, Yolo County filed a complaint under section 11350 and Civil Code section 248 to enforce defendant's support obligation as a noncustodial parent.[3] The county sought a determination that defendant is the father of Florence H., a minor. The county also sought reimbursement for AFDC funds paid for the benefit of the minor, ongoing child support, attorney's fees and court costs.

The action was bifurcated for trial. A jury found defendant to be the father of the minor, and judgment of paternity was entered thereafter. The support issues were then tried to the court without a jury.

The evidence showed that from September 1981 to 1984 Yolo County paid $6,117 in AFDC to a family unit that included defendant's minor child.

Defendant testified he lived with his wife and their two children. During the period in question, defendant was continuously unemployed and received AFDC benefits from Sacramento County as an unemployed parent. He had sought employment as a truck driver or transportation dispatcher

---

[2]Defendant appeals on an agreed statement (Rules 6, 126, Cal. rules of Court) from the trial court's orders directing him to pay Yolo County for child support. We presume the record includes all matters material to a determination of points on appeal. (Rule 52, Cal. Rules of Court; *Estate of Pierce* (1948) 32 Cal.2d 265, 274 [196 P.2d 1].) Also, because defendant failed to request a statement of decision, we will further presume that every fact necessary to support the judgment was found by the trial court in favor of the judgment, if supported by substantial evidence. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 645 [183 Cal.Rptr. 508, 646 P.2d 179]; *Hall* v. *Municipal Court* (1974) 10 Cal.3d 641, 643 [111 Cal.Rptr. 721, 517 P.2d 1185]; *Stewart* v. *Langer* (1935) 9 Cal.App.2d 60, 61 [48 P.2d 758].)

[3]The county may proceed under either statute in enforcing support obligations. (*In re Marriage of Lugo* (1985) 170 Cal.App.3d 427, 433 [217 Cal.Rptr. 74]; *County of Santa Barbara* v. *Flanders* (1976) 63 Cal.App.3d 486, 492 [133 Cal.Rptr. 798].)

but had not actively sought any other type of work. Defendant had no physical impairments or disabilities that might adversely affect his employability. He had participated in training programs.

The trial court ordered defendant to reimburse Yolo County $2,000 for aid paid from September 1981 through July 1984.[4] Defendant appeals from the order of reimbursement.

DISCUSSION

I

Defendant contends the trial court could not order him to pay any reimbursement because at all relevant times defendant received an AFDC grant. The trial court found that at all times defendant was able to earn income from work sufficient to support the child.

An initial issue is whether section 11350[5] and Civil Code section 248[6] contemplate that the court could consider earning capacity as an appropriate factor in ordering reimbursement to the county.

---

[4]The court also ordered defendant to pay the county $50 per month on-going support beginning August 1, 1984, and to pay court costs of $709.08. These orders are not challenged on appeal.

[5]Section 11350 provides: "In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents shall be obligated to the county for an amount equal to: [¶] (a) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; or in the absence of such court order, [¶] (b) The amount of aid paid to the family during such period of separation or desertion limited by such parent's reasonable ability to pay during that period in which aid was granted; and [¶] (c) Such obligation shall be reduced by any amount actually paid by such parent during such period of separation or desertion for the support and maintenance of such family. [¶] The district attorney shall take appropriate action pursuant to this section in the superior court of the county which provided aid under this chapter. [¶] The court may order the defendant to pay the county attorney fees and court costs, based on such defendant's reasonable ability to pay, in any proceeding brought by the county pursuant to this section. [¶] In making the determination of the defendant's reasonable ability to pay attorney's fees and court costs under this section, the court shall be limited to the following considerations: [¶] (a) The wealth and income of the defendant; [¶] (b) The current ability of the defendant to earn; [¶] (c) The age of the defendant."

[6]Civil Code section 248 provides: "The obligee may enforce his right of support against the obligor and the county may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support. The right of the county to reimbursement shall be subject to any limitation otherwise imposed by the law of this state. The court may order the obligor to pay the county reasonable attorney fees and court costs in any proceeding brought by the county pursuant to this section." Civil Code section 241 defines obligor as any person owing a duty of support and obligee as any person to whom a duty of support is owed.

■ Civil Code section 248 is part of the Uniform Civil Liability for Support Act. (Civ. Code, § 241 et seq., hereafter Uniform Act.) The Uniform Act creates private rights to enforce child support obligations. Receipt of public assistance operates as an assignment of these rights to the county by operation of law. (See § 11477[7]; *In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 295 [139 Cal.Rptr. 349].) The county in effect steps into the shoes of the person entitled to enforce the support obligation (obligee). The county has the same rights as the obligee. (*Ibid.*)

Civil Code section 246, subdivision (a) not only allows but requires a trial court to consider earning capacity in setting the amount of child support. That statute provides in pertinent part: "When determining the amount due for support, the court shall consider the following circumstances of the respective parties: [¶] (a) The earning capacity and needs of each party. . . ."

■ However, Civil Code section 248 subjects the county's reimbursement rights to limitations otherwise imposed by law. One limitation is that found in section 11350: reimbursement is "limited by such parent's reasonable ability to pay during that period in which aid was granted . . . ." (See fn. 5, *ante.*) However, this language does not preclude consideration of defendant's earning capacity, because we conclude section 11350 itself contemplates that a parent's reasonable ability to pay includes the reasonable ability to work and therefore earn funds to fulfill a support obligation.

We reach this conclusion for various reasons. First, the language of the statute necessarily implies it. The statute says in relevant part: "In making the determination of the defendant's reasonable ability to pay attorney's fees and court costs under this section, the court *shall be limited to* the following considerations: [¶] (a) The wealth and income of the defendant; [¶] (b) *The current ability of the defendant to earn;* [¶] (c) The age of the defendant." (§ 11350, italics added; see fn. 5, *ante.*) Thus, for purposes of determining a parent's liability for attorney's fees and court costs, the statute expressly authorizes the court to consider a parent's ability to earn income by working. However, ability to earn is one of three factors the court is "limited" to considering in determining liability for attorneys fees and costs. Since it is more important that parents pay support for their children than that they

---

[7]Section 11477 provides in part: "As a condition of eligibility for aid paid under this chapter, each applicant or recipient shall: [¶] (a) Assign to the county any rights to support from any other person such applicant may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at the time such assignment is made. *Receipt of public assistance under this chapter shall operate as an assignment by operation of law.* An assignment of support rights to the county shall also constitute an assignment to the state. . . ." (Italics added.)

pay court costs and attorney's fees, section 11350 therefore implies and indeed compels the conclusion that the court may consider earning capacity, together with other undescribed factors, in determining a defendant's reasonable ability to reimburse the county for support. ■ This necessary implication is as much a part of the statute as that which is expressly stated. (*Welfare Rights Organization* v. *Crisan* (1983) 33 Cal.3d 766, 771 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214].)

A second reason for our conclusion is found in section 11350, subdivision (a), which allows a county to receive reimbursement based on existing child support orders. (See fn. 5, *ante.*) Support awards, authorized under various Civil Code provisions, frequently arise in marital dissolution cases. As noted, the Uniform Act (Civ. Code, § 246) specifically authorizes consideration of earning capacity. The Family Law Act at the time of defendant's trial did not specify what factors could be considered in setting child support. (See Civ. Code, § 4700, subd. (a).)[8] However, courts in marital dissolution cases have long considered earning capacity in determining child support obligations, at least where there is evidence of avoidance of support obligations by failure to seek gainful employment. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 642 [Civ. Code, § 196]; *Pencovic* v. *Pencovic* (1955) 45 Cal.2d 97 [287 P.2d 501] [former Civ. Code, §§ 4801, 4700]; *In re Marriage of Williams* (1984) 155 Cal.App.3d 57, 62 [202 Cal.Rptr. 10]; *In re Marriage of Johnson* (1982) 134 Cal.App.3d 148, 156 [184 Cal.Rptr. 444] [Civ. Code, §§ 4801, 4700].) Consequently, section 11350, subdivision (a) allows reimbursement to a county based on a court order which, in turn, may be premised upon an ability to earn income from work. No reason exists why a parent's ability to earn income should not be considered in determining county's reimbursement rights under subdivision (b) of the same statute.

A third reason for our conclusion is found in section 11476.1. That statute, inter alia, allows the district attorney to enter into agreements for entry of judgment with noncustodial parents for child support where the district attorney has undertaken enforcement of support. Subdivision (g) of section 11476.1 provides, "For the purposes of this section, in making a determination of the noncustodial parent's reasonable ability to pay, any relevant circumstances set out in section 246 of the Civil Code shall be considered." Since, as we have seen, subdivision (a) of Civil Code section 246 requires the court to consider earning capacity, that factor is appropriately considered under section 11476.1. It would be anomalous to allow earning capacity to be considered where judgment is entered by agreement but not where

---

[8]Effective July 1, 1985, earning capacity is a proper consideration in any award for child support. (Civ. Code, §§ 4720, 4721, 4731.)

judgment is entered following trial. ■ Statutes relating to the same subject matter are to be construed together and harmonized if possible. (*County of Placer* v. *Aetna Cas. etc. Co.* (1958) 50 Cal.2d 182, 188-189 [323 P.2d 753].)

Another reason for our conclusion is that the statute originally conditioned a county's rights on a determination "that the parent of a recipient has been gainfully employed or has had sufficient assets to enable him to reasonably assist the recipient . . . ."[9] The Legislature eliminated the requirement of gainful employment in the Welfare Reform Act of 1971.[10] ■ "'It is ordinarily to be presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law.'" (*People* v. *Dillon* (1983) 34 Cal.3d 441, 467 [194 Cal.Rptr. 390, 668 P.2d 697], quoting *People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1].) ■ These changes compel the conclusion that actual gainful employment is no longer a requirement and that reasonable ability to pay support includes the *ability* to earn from work.

Our interpretation of section 11350 is also consistent with legislative and public policy. "[E]nforcement of child support rights involves not only a matter of private or local concern, but poses an important question for the federal and state governments as well." (*In re Marriage of Shore, supra,* 71 Cal.App.3d at p. 295.) AFDC is administered under a federally ap-

---

[9]As originally enacted, former section 1506.5 read: "If at any time during the continuance of aid under this chapter the county, upon investigation, determines that the parent of a recipient has been gainfully employed or has had sufficient assets to enable him to reasonably assist the recipient during the period in which the child was receiving aid, it may, after notifying the parent of the amount of assistance granted, bring suit against the parent to recover the amount of assistance paid under the provisions of this chapter, including any assistance paid after commencement of the suit and before rendition of judgment." (Stats. 1955, ch. 1253, § 1, p. 2286.) The statute was reenacted in the same form and renumbered as section 11350 in 1965. (Stats. 1965, ch. 1784, § 5, p. 4010.)

[10]The 1971 Amendment read: "In any case of separation or desertion of a parent or parents from their spouse and child or children which results in aid being granted under this chapter to such spouse and child or children, such parent or parents shall be obligated to the county for an amount equal to: (a) the value of the aid received by such family during such period of separation or desertion with respect to such spouse and child or children, reduced by (b) any amount actually paid by such parent or parents for the support and maintenance of such spouse and child or children during such period, if and to the extent that such amount reduces the aid received; except that in any case where an order for the support and maintenance of such spouse and child or children has been issued by a court of competent jurisdiction, the obligation under this section shall not exceed the amount specified in such order less any amount actually paid by such parent or parents during such period. In the absence of such an order, the district attorney shall bring suit for enforcement of support pursuant to this section. *Any payments required pursuant to this section shall be reasonably based on ability to pay.* [¶] The court may order the defendant to pay the county reasonable attorney fees and court costs in any proceeding brought by the county pursuant to this section." (Stats. 1971, ch. 578, § 25.5, p. 1158, italics added.)

proved state plan. (42 U.S.C. § 601 et seq.; Welf. & Inst. Code, § 10600.) All federal-state welfare programs are administered pursuant to federal as well as state law. (See, e.g., *Del Costello* v. *State of California* (1982) 135 Cal.App.3d 887, 891 [185 Cal.Rptr. 582]; *In re Marriage of Simmons* (1977) 72 Cal.App.3d 205, 208 [139 Cal.Rptr. 832].) Federal law requires that states enforce parental support obligations or face a reduction in federal funding of their AFDC programs. (*County of Santa Clara* v. *Support, Inc.* (1979) 89 Cal.App.3d 687, 695 [152 Cal.Rptr. 754] [citing 42 U.S.C. § 603(h)].) "[T]he primary reason underlying the public enforcement of support rights is to insure that the moneys disbursed by the county for the aid of a needy child be returned to the public source from which they were disbursed." (*In re Marriage of Shore, supra,* 71 Cal.App.3d at p. 298.) We can think of no reason why parents who are able to earn sufficient income should not reimburse the public treasury for the support of their children.

The trial court properly considered defendant's ability to earn income by working in determining his reimbursement obligation.

## II

▮▮▮ ▮▮ ▮ Defendant also contends a noncustodial parent who receives public assistance cannot be found to have a reasonable ability to work or pay child support as a matter of law.[11]

▮ Defendant argues the trial court's orders directing him to reimburse the county and pay continuing support violate section 11002,[12] which makes

---

[11]Even assuming arguendo Yolo County could be estopped by an appropriate administrative adjudication in Sacramento County, in the circumstances of this case, defendant's receipt of AFDC from Sacramento County did not estop Yolo County from litigating its claim that defendant was able to earn income from work. Administrative decisions may have collateral estoppel effect in subsequent proceedings, provided the traditional requirements and policy objectives of collateral estoppel are satisfied. (*People* v. *Sims* (1982) 32 Cal.3d 468, 477 [186 Cal.Rptr. 77, 751 P.2d 321].) In order to preclude relitigation of an issue, collateral estoppel requires that the issue be necessarily decided in a prior adversarial proceeding. (*Id.,* at p. 484.) Moreover, unless properly raised in the trial court by pleading or evidence, the defense of collateral estoppel is waived. (*Dillard* v. *McKnight* (1949) 34 Cal.2d 209, 218 [209 P.2d 387, 11 A.L.R.2d 835]; *Jordan* v. *Consolidated Mut. Ins. Co.* (1976) 59 Cal.App.3d 26, 45 [130 Cal.Rptr. 446].) The record before us fails to show either that defendant raised collateral estoppel as a defense in the trial court or that any adversarial proceeding ever took place in Sacramento County regarding defendant's ability to earn income from work during the pertinent periods of time.

[12]Section 11002 provides: "All aid given under a public assistance program shall be absolutely inalienable by any assignment, sale, or otherwise."

public assistance absolutely inalienable and section 11005.5,[13] which prohibits the use of public assistance for the benefit of others. In addition, although not cited by defendant, section 11350.2[14] proscribes the use of public assistance to satisfy a support obligation.

However, these statutes are not implicated in the order of the trial court. The court's reimbursement order is premised not upon defendant's receipt of AFDC but rather upon the factual finding that defendant had the ability to work and earn funds sufficient to pay support in the amount for which reimbursement was ordered. Although the cited statutes undoubtedly prohibit Yolo County from attaching, garnishing or executing upon defendant's AFDC grant (see Code Civ. Proc., §§ 703.070, subd. (a), 704.170), the record contains no indication the county has tried to do so.

The trial court properly found defendant had a reasonable ability to pay Yolo County for its support of his child even though he was receiving AFDC from Sacramento County.[15] (See *In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 645.)

DISPOSITION

The (judgment) order appealed from is affirmed.

Puglia, P. J., and Regan, J., concurred.

---

[13]Section 11005.5 provides: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person. Aid granted under this part or part A of Title XVI of the Social Security Act to a recipient or recipient group and the income or resources of such recipient or recipient group shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group."

[14]Section 11350.2 provides: "In no event shall public social service benefits, as defined in Section 10051, or benefits paid pursuant to Title XVI of the Social Security Act be employed to satisfy a support obligation."

[15]Defendant does not contend there is a lack of substantial evidence to support the order.